Richard W. Gonnello (admitted *pro hac vice*)
Megan M. Sullivan (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
         msullivan@faruqilaw.com
         klenahan@faruqilaw.com

Barbara Rohr SBN 273353
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Lead Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GERON CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:14-CV-01224-CRB<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Charles R. Breyer<br>Hearing Date:  April 7, 2017<br>Time:  10:00 A.M.<br>Courtroom:  6, 17th Floor<br><br><u>CONSOLIDATED CLASS ACTION</u> |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 7, 2017, at 10:00 a.m., in Courtroom 6 on the 17th Floor before the Honorable Charles R. Breyer at the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Plaintiff Vinod Patel ("Lead Plaintiff") hereby moves for an order (i) preliminarily approving the proposed settlement of this action; (ii) preliminarily certifying the proposed class for purposes of settlement; (iii) approving the form and manner of giving notice of the proposed settlement to the class; and (iv) scheduling a final approval hearing before the Court.  The grounds for this motion are that the proposed settlement is within the range of what could be found to be fair, reasonable, and adequate so that notice of its terms may be disseminated to members of the class and a hearing for final approval of the proposed settlement may be scheduled.

This motion is based upon the Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Stipulation and Agreement of Settlement dated March 2, 2017, filed simultaneously herewith (the "Stipulation"), the pleadings and records on file in this action, and other such matters and argument as the Court may consider at the hearing of this motion.

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION.........................................................................i

STATEMENT OF ISSUES TO BE DECIDED.....................................................vi

SUMMARY OF THE ARGUMENT...................................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................1

    A.    Description of the Action.................................................1

    B.    The Proposed Settlement..................................................4

ARGUMENT.............................................................................................5

I.    The Settlement Warrants Preliminarily Approval...................................5

    A.    The Proposed Settlement Is the Product of Arm's-Length Negotiations...............5

    B.    The Proposed Settlement Has No Obvious Deficiencies.......................6

    C.    The Settlement Does Not Unjustly Favor Any Settlement Class Members...........7

    D.    The Proposed Settlement Is Within the Range of Reasonableness.................8

II.    The Class Should Be Certified For Settlement Purposes...........................9

    A.  The Proposed Settlement Class Meets the Requirements of Rule 23(a)...............10

        1.    The Settlement Class Is Sufficiently Numerous.......................10

        2.    There Are Common Questions of Law and Fact.......................10

        3.    The Proposed Class Representative's Claims are Typical.................10

        4.    The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Settlement Class.................11

    B.  The Proposed Settlement Class Satisfies Rule 23(b)(3)....................12

        1.    Common Questions of Law and Fact Predominate Over Questions Affecting Only Individual Members of the Class...............12

        2.    A Class Action Is Superior to Other Methods of Adjudication..............12

III.    The Proposed Class Notice Should Be Approved.............................13

IV.    The Proposed Schedule Of Events.........................................15

CONCLUSION ...........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Altamirano v. Shaw Indus.*,
 2015 U.S. Dist. LEXIS 97098 (N.D. Cal. July 24, 2015) ................................ vii, 7

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997) ...........................................................................................12

*Angell v. City of Oakland*,
 2015 U.S. Dist. LEXIS 1037 (N.D. Cal. Jan. 5, 2015).........................................7

*Booth v. Strategic Realty Trust Inc.*,
 2015 U.S. Dist. LEXIS 84143 (N.D. Cal. June 28, 2015)...................................10

*In re Celera Corp. Secs. Litig.*,
 2015 U.S. Dist. LEXIS 42228 (N.D. Cal. Mar. 31, 2015) ............................. vii, 5

*Chao v. Aurora Loan Servs., LLC*,
 2014 U.S. Dist. LEXIS 124575 (N.D. Cal. Sept. 5, 2014)..................................12

*Epstein v. MCA, Inc.*,
 179 F.3d 641 (9th Cir. 1999).............................................................................13

*Franklin v. Kaypro Corp.*,
 884 F.2d 1222 (9th Cir. Cal. 1989) .....................................................................5

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998)......................................................................10, 11

*Harris v. Vector Mktg. Corp.*,
 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011).....................................5

*Hendricks v. Starkist Co*,
 2015 U.S. Dist. LEXIS 96390 (N.D. Cal. July 23, 2015) .....................................8

*In re Heritage Bond Litig.*,
 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).....................................5

*Krzesniak v. Cendant Corp.*,
 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007)...................................10

*In re Magma Design Automation Sec. Litig.*,
 2007 U.S. Dist. LEXIS 62641 (N.D. Cal. Aug. 16, 2007) (Breyer, J.)..................... viii, 9, 10

*McCabe v. Six Continents Hotels, Inc.*,
 2015 U.S. Dist. LEXIS 85084 (N.D. Cal. June 30, 2015)................................ vii, 7

*Nielson v. Sports Auth.*,
 2013 U.S. Dist. LEXIS 106018 (N.D. Cal. July 26, 2013) ................................ viii

iv

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ..................................................................13

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ..............................................................................13

*In re Portal Software, Inc. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007)......................... viii, ix, 14

*Ramirez v. Ghilotti Bros.*,
   2014 U.S. Dist. LEXIS 56038 (N.D. Cal. Apr. 21, 2014) (Breyer, J.)....................................6

*Rubio-Delgado v. Aerotek, Inc.*,
   2015 U.S. Dist. LEXIS 75300 (N.D. Cal. June 10, 2015)........................................9

*Ruch v. Am Retail Grp., Inc.*,
   2016 U.S. Dist. LEXIS 39629 (N.D. Cal. Mar. 24, 2016) .......................... viii, 7, 8

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................. viii

*Swain v. Ryder Integrated Logistics, Inc.*,
   2012 U.S. Dist. LEXIS 93215 (N.D. Cal. 2012) (Breyer, J.)........................ vii, 6, 9

*In re Verisign, Inc. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005)................................12, 13

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 U.S. Dist. LEXIS 166704 (N.D. Cal. Nov. 20, 2012) ....................................7

*In re Zynga Sec. Litig.*,
   2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015) ........................... *passim*

**Statutes**

15 U.S.C. § 78u-4(a)(7)..............................................................................14

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................. *passim*

Svetlana Starykh and Stefan Boettrich,
   *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review*
   (NERA 2017) ........................................................................................9

## STATEMENT OF ISSUES TO BE DECIDED

1.    Should the proposed settlement be preliminarily approved?

2.    Should the proposed form and manner of notice to the Class be approved?

3.    Should the proposed class be preliminarily certified for settlement purposes?

## SUMMARY OF THE ARGUMENT

After nearly three years of intensive litigation, Lead Plaintiff seeks preliminary approval of a proposed settlement of this putative class action (the "Action") for $6,250,000 (the "Settlement"). The Settlement represents a certain and substantial recovery for the members of the proposed Settlement Class (the "Class Members") and clearly "falls within the range of possible approval." *In re Celera Corp. Secs. Litig.*, 2015 U.S. Dist. LEXIS 42228, at *9 (N.D. Cal. Mar. 31, 2015). Furthermore, the Settlement "(1) . . . appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, [and] (3) does not improperly grant preferential treatment to class representatives or segments of the class[.]" *In re Zynga Sec. Litig.*, 2015 U.S. Dist. LEXIS 145728, at *32 (N.D. Cal. Oct. 27, 2015). The terms of the Settlement were reached with the assistance of experienced mediator Hon. Layn Phillips at an in-person mediation session and through the course of numerous conference calls involving the Settling Parties and the mediator. *See Swain v. Ryder Integrated Logistics, Inc.*, 2012 U.S. Dist. LEXIS 93215, at *2 (N.D. Cal. 2012) (Breyer, J.) ("The assistance of an experienced mediator in the settlement process supports the Court's conclusion that the settlement is non-collusive."). The Settlement releases only those claims based upon the same factual predicate as the allegations in this Action; the *cy pres* beneficiary has a reasonable nexus to the claims in this Action; and counsel is requesting no more than the Ninth Circuit benchmark in attorneys' fees. *See McCabe v. Six Continents Hotels, Inc.*, 2015 U.S. Dist. LEXIS 85084, at *21-24 (N.D. Cal. June 30, 2015). The Net Settlement Fund will be distributed pursuant to a Plan of Allocation developed in consultation with an expert, and Plaintiffs will receive their *pro rata* share of the fund. *See Altamirano v. Shaw Indus.*, 2015 U.S. Dist. LEXIS 97098, at *22 (N.D. Cal. July 24, 2015). The Settlement Amount is also within the range of possible approval in light of the substantial risks and expenses of future litigation which

1    could result in little recovery or no recovery at all.  *See Ruch v. Am Retail Grp., Inc.*, 2016 U.S.

2    Dist. LEXIS 39629, at *37 (N.D. Cal. Mar. 24, 2016).

3         Lead Plaintiff also requests that the settlement Class be preliminarily certified for settlement

4    purposes.  "As in almost all lawsuits by shareholders of public companies, the investors in this case

5    easily satisfy the requirements of Rule 23."  *In re Magma Design Automation Sec. Litig.*, 2007 U.S.

6    Dist. LEXIS 62641, at *2 (N.D. Cal. Aug. 16, 2007) (Breyer, J.).  As set forth herein, the Action

7    readily satisfies Rule 23(a) because (a) the Class has over 100 members; thus, joining all Class

8    Members would be impracticable; (b) Class Members share common questions of law and fact,

9    including the alleged falsity of Defendants' (defined below) statements and omissions during the

10   Class Period, as well as their scienter; (c) Lead Plaintiff's claims are typical of the Class's claims

11   because he allegedly suffered damages as a result of his purchases of Geron Corporation ("Geron"

12   or the "Company") common stock; and (d) Lead Plaintiff has demonstrated his adequacy by

13   litigating this Action for nearly three years and obtaining this favorable result.  *See Staton v. Boeing*

14   *Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  This Action also satisfies the requirements of Rule 23(b)(3)

15   because the same set of operative facts applies to each Class Member (*i.e.* each Class Member

16   purchased Geron common stock at prices alleged to be artificially inflated as a result of Defendants'

17   false and misleading statements and/or omissions and was allegedly harmed when the undisclosed

18   facts came to light) and the Class Members are too numerous to bring individual actions.  *See*

19   *Nielson v. Sports Auth.*, 2013 U.S. Dist. LEXIS 106018, at *19 (N.D. Cal. July 26, 2013).  In

20   addition to certifying the Class for settlement purposes, Lead Plaintiff also respectfully requests that

21   the Court appoint Faruqi & Faruqi, LLP ("Lead Counsel" or the "Faruqi Firm") as Class Counsel

22   for the Action.  *See* Fed. R. Civ. P. 23(g).

23        Lead Plaintiff requests that the Court approve the form and manner of notice to be provided

24   to proposed Class Members.  The Settlement Notice and Publication Notice include all of the

25   information that is required by due process, Rule 23(c)(2)(B), Rule 23(e), and the Private Securities

26   Litigation Reform Act of 1995, (the "PSLRA"), 15 U.S.C. § 78u-4, and are to be made available to

27   Class Members through the standard methods of mailing, publication, and a designated website.

28   *See, e.g.*, *In re Portal Software*, *Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *18-19 (N.D. Cal.

**LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT**
**CV 14 1224 CRB**

June 30, 2007) (dissemination of notice to all reasonably identifiable class members and published summary notice approved as best practical).

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, on behalf of himself and the putative Class, and defendants Geron, John A. Scarlett, Stephen M. Kelsey, and Olivia K. Bloom (collectively, "Defendants")[1] have reached a proposed settlement of this Action for $6,250,000 that, if approved, will resolve all claims in the Action. Lead Plaintiff respectfully submits this memorandum of law in support of his motion and requests that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").[2] The Preliminary Approval Order will, among other things, (1) preliminarily approve the Settlement on the terms set forth in the Stipulation; (2) certify the Class for settlement purposes; (3) appoint Lead Plaintiff as Class Representative and the Faruqi Firm as Class Counsel; (4) approve the form and manner of giving notice of the Settlement to the Class; and (5) set a date for the Final Fairness Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      Description of the Action

Rohan Kishtagari filed the initial complaint on March 14, 2014 in the Northern District of California, captioned *Kishtagari v. Geron Corporation, et al.*, CV 14-1224 (N.D. Cal. Mar. 14, 2014). On March 28, 2014, James Beckman filed a second action, captioned *Beckman v. Geron Corporation, et al.*, CV 14-1424 (N.D. Cal. Mar. 28, 2014. The *Kishtagari* and *Beckman* Actions named Geron, Scarlett, and Bloom as defendants.

On May 13, 2014, several movants filed motions to consolidate the *Kishtagari* and *Beckman* Actions and to be appointed Lead Plaintiff in the Actions in accordance with the PSLRA. ECF Nos. 17-27. Vinod Patel was the movant with the largest financial interest. Accordingly, on June 30, 2014, the Court consolidated the actions into one action captioned *In re Geron Corporation Securities Litigation*, CV 14-1224 (N.D. Cal. Mar. 14, 2014) (the "Action"), appointed Patel as Lead Plaintiff, and approved his selection of the Faruqi Firm as Lead Counsel. ECF No. 42.

---

[1]      Lead Plaintiff and Defendants are defined herein as the "Settling Parties."
[2]      All capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation and Agreement of Settlement dated as of March 2, 2017 (the "Stipulation"), filed concurrently herewith. All references to the "Gonnello Decl." are to the Declaration of Richard W. Gonnello in Support of Lead Plaintiff's Motion for Preliminary Approval of the Class Action Settlement filed in support hereof. All quotations and citations are omitted unless otherwise noted.

1    Subsequently, Lead Plaintiff filed the Consolidated Amended Class Action Complaint (the

2    "CAC") on September 19, 2014 adding Kelsey as a defendant.  ECF No. 45.  The CAC alleges that

3    during the Class Period, Defendants made a series of false and misleading statements regarding the

4    safety data from the Company's Phase 2 trial for its drug imetelstat in patients with essential

5    thrombocythemia and polycythemia vera (the "ET Trial").  First, in December 2012, Defendants

6    began to present the preliminary results for the first 14 out of 18 total patients enrolled in the ET

7    Trial stating that "[l]ong-term administration of imetelstat was generally well tolerated[,]" but

8    disclosed that the liver function tests ("LFTs") from 92.9% of patients showed elevations in the

9    liver enzymes alanine aminotransferase ("ALT") or aspartate aminotransferase ("AST") in "All

10   Grades" and 14.3% of patients experienced Grade 3 elevations in AST or ALT.  CAC at ¶56.  Three

11   months later, on March 13, 2013, Geron begrudgingly disclosed more robust safety data from the

12   ET Trial showing more serious LFT abnormalities and admitting that "because when we presented

13   the data in December at ASH, we basically had to get the pertinent data into 12 slides, . . . ***I don't***

14   ***think that the two slides that we presented on safety did full justice to the clinical picture***."  CAC

15   ¶83.  On this news, Geron's stock dropped $0.12 on March 13, 2013, on unusually heavy volume.

16   CAC ¶158.

17       Throughout the remainder of the Class Period, Defendants stated that the Company was

18   "continuing to treat and follow patients previously enrolled in the" ET Trial (CAC ¶¶90, 95, 97, 99,

19   101); imetelstat has been "well tolerated" in all patients who had been treated in the ET Trial (CAC

20   ¶¶78, 80, 83, 85, 92, 94, 101, 104, 128); and that "LFT abnormalities do not appear to progressively

21   worsen over time" (CAC ¶¶94, 101, 128).  Defendants failed to disclose that when these statements

22   were made, they were not in fact following many of the patients who had been enrolled in the ET

23   Trial, and thus were unaware whether the drug was being well tolerated, whether the LFT

24   abnormalities worsened over time, or whether the LFT abnormalities were reversible.  On March

25   12, 2014, Geron announced that the U.S. Food and Drug Administration (the "FDA") placed a

26   clinical hold on the investigational new drug application for imetelstat "due to the occurrence of

27   persistent low-grade liver function test (LFT) abnormalities observed in the Phase 2 study of

28   imetelstat in ET patients and the potential risk of chronic liver injury following long-term exposure

to imetelstat." ¶131.  On this news, the price of Geron common stock dropped $2.56 per share, or 61% in one trading day.

On November 18, 2014, Defendants moved to dismiss the CAC for failure to state a claim by filing the Motion to Dismiss the Consolidated Amended Class Action Complaint (the "Motion to Dismiss").  ECF No. 54-56.  On April 10, 2015 the Court denied in part and granted in part the Motion to Dismiss.  ECF No. 73.  Specifically, as explained in the Order filed on April 15, 2015 (the "MTD Order"), the Court upheld the Section 10(b) and Rule 10b-5 claims against Geron, Scarlett, Bloom, and Kelsey and the Section 20(a) control person claims against Scarlett, Bloom, and Kelsey for fifteen different false and misleading statements made throughout the Class Period. ECF No. 75.

On May 20, 2015, Defendants filed the Motion for Leave to File a Motion for Reconsideration of the April 15, 2015 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint (the "Motion for Leave"). ECF No. 80.  On May 22, 2015, Defendants filed the Answer to Plaintiff's Consolidated Amended Class Action Complaint.  ECF No. 81.  The Court subsequently denied the Motion for Leave on September 3, 2015.  ECF No. 90.

Several months later, the Settling Parties engaged Judge Layn Phillips (Ret.) a well-respected and highly experienced mediator, to assist them in exploring a potential resolution of the Action.  On November 2, 2015, the Settling Parties met with Judge Phillips for an arm's-length mediation session.  During the session, the parties extensively debated the strengths and weaknesses of Lead Plaintiff's claims and the defenses available to Defendants; however, the Settling Parties were not able to reach an agreement during the session.  To facilitate settlement, after the mediation session, Defendants agreed to produce certain categories of documents to Lead Plaintiff in order to shed light on their defenses.  Lead Counsel reviewed several thousand pages of documents, and then engaged in additional discussions with Defendants' Counsel to debate the merits of the claims.

The Settling Parties were not able to come to an agreement at that time, so on December 11, 2015, they exchanged Rule 26(a)(1) Initial Disclosures.  Then, on July 8, 2016, Lead Plaintiff propounded document requests on Defendants and began the processes of serving third-party

1  subpoenas on the FDA and Geron's liver panel experts. In response, on August 4, 2016,

2  Defendants propounded document requests and interrogatories on Lead Plaintiff and noticed his

3  deposition. The following week Lead Plaintiff filed his Motion for Class Certification (ECF Nos.

4  108, 109). Shortly thereafter, the Settling Parties sought leave to stay the class certification briefing

5  schedule in order to engage in an additional mediation session with Judge Phillips. ECF No. 110.

6  The Settling Parties met for an in-person mediation discussion on September 1, 2016 without Judge

7  Phillips and continued to mediate telephonically with the assistance of Judge Phillips. After

8  substantial discussions that had spanned the course of a year, on November 11, 2016, the Settling

9  Parties were able to reach an agreement in principle to settle the claims against Defendants and then

10  worked over the course of several months to finalize the terms of the Stipulation.

11       **B.**     **The Proposed Settlement**

12       The Settlement provides that the Defendants will cause to be paid the amount of $6,250,000,

13  in cash, to settle all claims in the Action. The Settlement Amount will be placed into an interest-

14  bearing escrow account and, after paying attorneys' fees and expenses approved by the Court, and

15  other costs of settlement, the Net Settlement Fund will be distributed to Authorized Claimants. In

16  exchange for the payment of the Settlement Amount, Lead Plaintiff and the settlement Class will

17  release all Settled Claims against the Defendant Releasees.

18       Lead Plaintiff entered into this Settlement with a full and comprehensive understanding of

19  the strengths and weaknesses of the claims in the CAC, which are based on Lead Counsel's

20  extensive experience with securities litigation, the investigation performed in connection with the

21  filing of the amended complaints, the legal research conducted in connection with the motion to

22  dismiss and the motion for class certification, the numerous discovery documents reviewed by Lead

23  Counsel, and consultation with medical and damages experts. Lead Plaintiff believes that the

24  claims asserted in this Action have merit and that the evidence developed to date supports the

25  claims. Lead Plaintiff and Lead Counsel recognize, however, the expense and length of continued

26  proceedings necessary to prosecute the Action through trial and possible appeals, as well as the

27  uncertain outcome of any litigation, especially in complex actions such as this. Lead Plaintiff and

28  Lead Counsel also are mindful of the inherent problems of proof under and possible defenses to the

1   securities law violations asserted in the Action.  In light of these obstacles, Lead Plaintiff and Lead

2   Counsel believe the Settlement set forth in the Stipulation confers substantial benefits upon, and

3   thus is in the best interest of, the Class.

**ARGUMENT**

## I.    The Settlement Warrants Preliminarily Approval

Fed. R. Civ. P. 23(e) provides that any compromise of a class action must receive court

approval.  The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where

complex class action litigation is concerned."  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS

13555, at *9 (C.D. Cal. June 10, 2005).  "[T]here is an overriding public interest in settling and

quieting litigation.  This is particularly true in class action suits. . . ."  *Franklin v. Kaypro Corp.*,

884 F.2d 1222, 1229 (9th Cir. Cal. 1989).

The settlement approval process entails two steps: "(1) preliminary approval of the

settlement; and (2) final approval of the settlement at a fairness hearing following notice to the

class."  *Celera*, 2015 U.S. Dist. LEXIS 42228, at *9.  "Preliminary approval is appropriate where

the proposed settlement is neither illegal nor collusive and is within the range of possible approval."

*Id.*  Thus, at this juncture, the court should preliminarily approve a settlement and notice to the class

if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive

negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to

class representatives or segments of the class, [4] and falls within the range of possible approval."

*Zynga*, 2015 U.S. Dist. LEXIS 145728, at *32.

### A.    The Proposed Settlement Is the Product of Arm's-Length Negotiations

The first factor considers the method by which the parties arrived at the settlement.  "An

initial presumption of fairness is usually involved if the settlement is recommended by class counsel

after arm's-length bargaining."  *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, at *24

(N.D. Cal. Apr. 29, 2011).  Here, the parties agreed on the Settlement Amount after, *inter alia*, (1)

Lead Counsel conducted a lengthy investigation into the facts alleged in the Action; (2) Lead

Counsel drafted an amended complaint; (3) the Settling Parties engaged in motion to dismiss

briefing; (4) Defendants filed the Answer to the CAC and a Motion for Leave; (5) the Settling

1  Parties exchanged discovery requests and Lead Plaintiff served third-party subpoenas; (6) Lead

2  Counsel reviewed thousands of pages of documents from Defendants and third-parties; (7) Lead

3  Counsel filed a motion for class certification; and (8) Lead Counsel consulted with medical and

4  economic experts.  Thus, the Settling Parties engaged in negotiations with a comprehensive

5  understanding of the strengths and weaknesses of their positions and the procedural hurdles facing

6  this Action.  *See Zynga*, 2015 U.S. Dist. LEXIS 145728, at *33 ("For the parties to have brokered a

7  fair settlement, they must have been armed with sufficient information about the case to have been

8  able to reasonably assess its strengths and value.").

9        The negotiations first took place in a formal, in-person session with the assistance of a well-

10 respected mediator with significant experience mediating securities fraud class actions.  *Swain*,

11 2012 U.S. Dist. LEXIS 93215, at *2 ("The assistance of an experienced mediator in the settlement

12 process supports the Court's conclusion that the settlement is non-collusive.").  The parties

13 vigorously debated their positions but they were unable to come to an agreement at that time.  Over

14 the course of the following year, the parties entered into the discovery phase of litigation whereby

15 Lead Counsel reviewed thousands of pages of discovery documents and continued to consult with

16 medical and economic experts.  During this time, the parties continued to engage in settlement

17 discussions with the help of Judge Phillips and were eventually able to reach a resolution.

18 Furthermore, counsel is experienced in this type of litigation.  Lead Counsel is a nationally-

19 recognized law firm with substantial experience prosecuting securities class actions.  *See* Gonnello

20 Decl., Ex. 2.  Additionally, Defendants' Counsel, Cooley LLP, is renowned for its securities

21 litigation practice.  This Court has found that this factor weighs heavily in support of approval,

22 explaining that "[w]hen class counsel is experienced and supports the settlement, and the agreement

23 was reached after arm's length negotiations, courts should give a presumption of fairness to the

24 settlement."  *Ramirez v. Ghilotti Bros.*, 2014 U.S. Dist. LEXIS 56038, at *3 (N.D. Cal. Apr. 21,

25 2014) (Breyer, J.).  Having settled numerous securities class actions, Lead Counsel believes that the

26 terms of the Settlement are fair, adequate, and reasonable.

27        **B.      The Proposed Settlement Has No Obvious Deficiencies**

28        The Court must next consider whether the proposed Settlement has any obvious

1  deficiencies.  Courts often look at the class definition, the scope of the release, the *cy pres*

2  beneficiaries, and whether the requested attorneys' fees are reasonable.  *See McCabe v. Six*

3  *Continents Hotels, Inc.*, 2015 U.S. Dist. LEXIS 85084, at *21-24 (N.D. Cal. June 30, 2015).

4  Here the Class includes all investors who purchased common stock during the time in which

5  Defendants were purportedly committing securities fraud and who allege to have been damaged as

6  a result.  The Settling Parties were careful to exclude all parties related to Defendants and any

7  Person who may have benefitted from Defendants' actions.  Next, the "Settlement Agreement's

8  release language appropriately releases only claims based on the same factual predicate as the

9  underlying claims in this case" and only claims based upon the purchase or acquisition of Geron

10  common stock during the Class Period.  *Ruch*, 2016 U.S. Dist. LEXIS 39629, at *33.  "Such a

11  narrow release warrants preliminary approval."  *Id.*; *see also Angell v. City of Oakland*, 2015 U.S.

12  Dist. LEXIS 1037, at *23 (N.D. Cal. Jan. 5, 2015).

13  Lastly, Lead Counsel is requesting attorneys' fees not to exceed 25% of the Net Settlement

14  Fund and up to $200,000 in litigation expenses.  "In common fund cases such as this, [the Ninth

15  Circuit has] established twenty-five percent (25%) of the common fund as the benchmark award for

16  attorney fees."  *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 166704, at *18 (N.D.

17  Cal. Nov. 20, 2012).  Lead Counsel respectfully submits that the requested award is reasonable and

18  should not weigh against preliminary approval.  *See Ruch*, 2016 U.S. Dist. LEXIS 39629, at *35.

19  **C.     The Settlement Does Not Unjustly Favor Any Settlement Class Members**

20  Under the third factor the Court examines whether the settlement grants preferential

21  treatment to any Class Member.  Here, Lead Counsel enlisted the help of a damages expert to

22  prepare a Plan of Allocation that is designed to distribute a *pro rata* share of the Net Settlement

23  Fund to Authorized Claimants based upon their claimed losses.  Since the "[P]lan of [A]llocation

24  submitted to the Court compensates class members in a manner generally proportionate to the harm

25  they suffered on account of [the] alleged misconduct[,]" this factor supports approval.  *Altamirano*,

26  2015 U.S. Dist. LEXIS 97098, at *22.  While Lead Plaintiff will receive a distribution from the Net

27  Settlement Fund in accordance with the Plan of Allocation, he may also seek reimbursement of his

28  expenses incurred as a result of the activities related to his representation of the Class, as authorized

by the PSLRA.  "The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable."  *Hendricks v. Starkist Co*, 2015 U.S. Dist. LEXIS 96390, at *17 (N.D. Cal. July 23, 2015).

### D.        The Proposed Settlement Is Within the Range of Reasonableness

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer."  *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *39.  Thus, the Court may preview the factors that ultimately inform final approval: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *See Ruch*, 2016 U.S. Dist. LEXIS 39629, *37.

Here, all of the factors support preliminary approval.  If the Action were to continue, Lead Plaintiff would face numerous obstacles and risks.  While Lead Plaintiff has always believed that his positions have merit, Defendants have raised numerous challenges and adamantly deny any wrongdoing.  Defendants' positions might prevail on summary judgment, or the court might deny class certification.  If the Action were to survive those hurdles, the outcome of trial would be uncertain and might leave the Class with no recovery at all.  As well, further litigation would involve considerable costs and a significant investment of time by the parties and their respective counsel and would burden the resources of the Court.  In contrast to these risks and challenges, the Settlement provides an immediate and certain benefit to the Class.

In addition to providing the Class with a prompt recovery, Lead Plaintiff submits that the Settlement Amount is an excellent result, constituting a material percentage of the likely provable damages suffered by the Class.  It is currently estimated that if Class Members submit claims for 100% of the shares eligible for distribution, the average distribution per share of common stock will be approximately $0.08 before deduction of Court-approved fees and expenses.  If Lead Plaintiff were to prevail on each of the claims in the CAC at trial, the damages per share of common stock

would be approximately $1.63.  The Settlement Amount is 4.9% of the maximum damages Lead

Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent

activity.  This is much higher than the median ratio of settlement amounts to investor losses for

2016 which NERA Economic Consulting determined was 2.1%.  *See* Gonnello Decl. Ex. 1 at 37,

Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2016*

*Full-Year Review* (NERA 2017).  As one court in this District recently noted, "[a]lthough the

proposed settlement is only a small percentage of the total expected recovery at trial, there is no

reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a

thousandth part of a single percent of the potential recovery." *Rubio-Delgado v. Aerotek, Inc.*, 2015

U.S. Dist. LEXIS 75300, at *29 (N.D. Cal. June 10, 2015).

In regard to the other factors, as set forth more fully above, the Settlement was reached after

more than two years of hard-fought litigation and is supported by experienced counsel.  Finally,

there is no governmental entity involved and notice has not been distributed to the Class, so these

factors are not relevant.  Thus, the Settlement is within the range of possible approval and warrants

preliminary approval to permit Class Members to at least consider the terms of the Settlement.

## II.     The Class Should Be Certified For Settlement Purposes

Lead Plaintiff seeks approval the following Settlement Class: Lead Plaintiff and all persons

who purchased or otherwise acquired Geron common stock during the period between December

10, 2012 and March 11, 2014, both dates inclusive, and who allege to have been damaged thereby.

*See* Stipulation ¶1.

"Where, as here, the Parties reach a settlement agreement prior to class certification, a

district court must first assess whether a class exists for settlement purposes." *Swain*, 2012 U.S.

Dist. LEXIS 93215, at *3.  In order to obtain class certification, a plaintiff must establish the

requirements of Rule 23(a) and one of the three subsections of Rule 23(b).  *See Zynga*, 2015 U.S.

Dist. LEXIS 145728, at *24.  "As in almost all lawsuits by shareholders of public companies, the

investors in this case easily satisfy the requirements of Rule 23." *Magma*, 2007 U.S. Dist. LEXIS

62641, at *2.

9

**A.     The Proposed Settlement Class Meets the Requirements of Rule 23(a)**

**1.     The Settlement Class Is Sufficiently Numerous**

Under Rule 23(a) a class may be certified if it is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[C]ourts have held that numerosity may be presumed when the class comprises forty or more members." *Krzesniak v. Cendant Corp.*, 2007 U.S. Dist. LEXIS 47518, at *18 (N.D. Cal. June 20, 2007).

During the Class Period, Geron common stock was traded on the NASDAQ exchange.  *See* CAC ¶143.  As of March 6, 2014, there were more than 156 million shares of Geron common stock outstanding, owned by thousands of people.  *See* Geron Corporation, Annual Report (Form 10-K) (2014).  Thus, the Class is sufficiently numerous because joinder would be impracticable.  *See Booth v. Strategic Realty Trust Inc.*, 2015 U.S. Dist. LEXIS 84143, at *26 (N.D. Cal. June 28, 2015) ("[S]ecurities fraud cases fit Rule 23 like a glove.").

**2.     There Are Common Questions of Law and Fact**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." "Courts regularly hold that commonality is plainly satisfied in a securities case where the alleged misrepresentations in the prospectus relate to all the investors, because the existence and materiality of such misrepresentations obviously present important common issues." *Booth*, 2015 U.S. Dist. LEXIS 84143, at *10.

In this case, the overarching issue shared by all members of the proposed settlement Class is whether Defendants violated the Exchange Act and the rules promulgated thereunder in connection with Lead Plaintiff's factual allegations discussed above.  *See* CAC ¶164.  This issue involves common questions because each Class Member has to prove the same elements to establish Defendants' liability and thus the low hurdle of Rule 23(a)(2) is satisfied.  *See Zynga*, 2015 U.S. Dist. LEXIS 145728, at *26-27 (finding commonality when the questions common to the class were the elements of a securities fraud claim).

**3.     The Proposed Class Representative's Claims are Typical**

A class may be certified if the claims of the representative parties are typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims

1   are typical if they are reasonably co-extensive with those of absent class members; they need not be

2   substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

3   Lead Plaintiff's claims arise from the same events and alleged misconduct and are based on

4   the same legal theories as those of the proposed settlement Class.  Here, Lead Plaintiff claims that

5   (a) Defendants violated §§ 10(b) and 20(a) of the Exchange Act by issuing false and misleading

6   statements; (b) Lead Plaintiff and other settlement Class Members purchased Geron common stock

7   at artificially inflated prices based on those false and misleading statements and were damaged

8   thereby; and (c) by proving Lead Plaintiff's own claims, Lead Plaintiff would prove the claims of

9   the settlement Class Members.  Thus, there is a sufficient nexus between Lead Plaintiff's claims

10  and the Class's claims to satisfy Rule 23(a)(3).

11
12
>    **4.    The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Settlement Class**

13  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

14  interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal

15  adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

16  class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

17  on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

18  Lead Plaintiff's interests in this case are directly aligned with those of the other members of

19  the proposed Settlement Class.  Lead Plaintiff claims that he suffered damages from the same

20  alleged conduct as the other members of the Class, and through those claims seeks the same

21  recovery from Defendants.  Accordingly, Lead Plaintiff is a more than adequate representative of

22  the Settlement Class.

23  Lead Plaintiff's counsel is qualified, experienced, and able to conduct this litigation.

24  Indeed, Lead Counsel, a national law firm, has successfully litigated numerous securities fraud and

25  complex class action cases.  *See* Gonnello Decl., Ex. 2.  Lead Counsel has devoted significant effort

26  to identifying and investigating the potential claims in this Action and fought vigorously to preserve

27  those claims.  *See* Fed. R. Civ. P. 23(g)(1)(A).  Based on the foregoing, Lead Plaintiff is an

28  adequate representative for the settlement Class and Lead Counsel satisfies Rule 23(g).

**B.     The Proposed Settlement Class Satisfies Rule 23(b)(3)**

**1.      Common Questions of Law and Fact Predominate Over Questions Affecting Only Individual Members of the Class**

"[T]he predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *29.  Rule 23(b)(3) does not require plaintiffs "to prove that each element of their claim is susceptible to class-wide proof." *Chao v. Aurora Loan Servs., LLC*, 2014 U.S. Dist. LEXIS 124575, at *16 (N.D. Cal. Sept. 5, 2014).

Here, the common questions of law and fact described above predominate over any individual questions.  The same set of operative facts applies to each Class Member (*i.e.* each Class Member purchased or otherwise acquired Geron common stock during the settlement Class Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading statements and/or omissions and each Class Member was allegedly harmed when the undisclosed facts came to light). *See Zynga*, 2015 U.S. Dist. LEXIS 145728, at *29-30 (finding predominance satisfied when each class member purchased stock and suffered damages as a result).

**2.      A Class Action Is Superior to Other Methods of Adjudication**

With respect to the superiority prong of Rule 23(b)(3), four factors should be considered: (i) the interest of class members in individually prosecuting separate actions; (ii) the extent of any litigation already commenced by class members; (iii) the desirability of concentrating the litigation in the particular forum; and (iv) the difficulties in management of a class action. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 616 (1997).  Courts have recognized that "[c]lass actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants." *In re Verisign, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438, at *31-32 (N.D. Cal. Jan. 13, 2005).

All four factors are satisfied in this case.  First, prosecution of this lawsuit on a class action basis will be more efficient than adjudication of the numerous individual shareholder claims because the shareholders are geographically dispersed and have relatively small claims. *See id.* at *33 (finding class action superior when "[m]illions of VeriSign shares were traded daily during the

1    Class Period, and over a billion shares were traded during the Class Period.").

2          Second, Lead Plaintiff and Lead Counsel have already invested significant resources thus

3    far in preserving and prosecuting the claims asserted in the CAC.  Any additional individual

4    litigation would simply be duplicative of Lead Plaintiff's efforts.  As well, certification is the

5    superior method to facilitate the resolution of the Class's claims against Defendants because, absent

6    certification, Defendants would not be able to obtain a Class-wide release and thus would have little

7    incentive to enter into a settlement.  Thus, Lead Plaintiff has satisfied the superiority requirement of

8    Rule 23(b)(3) and this Court should certify the proposed settlement Class.

9    **III.    The Proposed Class Notice Should Be Approved**

10          Pursuant to the Fifth Amendment, due process for class action plaintiffs requires that

11   counsel provide "notice plus an opportunity to be heard and participate in the litigation[.]"  *Epstein*

12   *v. MCA, Inc.*, 179 F.3d 641, 649 (9th Cir. 1999).  In *Phillips Petroleum Co. v. Shutts*, the Supreme

13   Court held that due process is satisfied "where a fully descriptive notice is sent first-class mail to

14   each class member, with an explanation of the right to opt out[.]"  472 U.S. 797, 812 (1985).

15          As well, "[f]or any class certified under Rule 23(b)(3), class members must be afforded the

16   best notice practicable under the circumstances, which includes individual notice to all members

17   who can be identified through reasonable effort."  *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *48.

18   Under this standard, the notice must state the following in plain language: (i) the nature of the

19   action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class

20   member may enter an appearance through an attorney; (v) that the court will exclude from the class

21   any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii)

22   the binding effect of a class judgment on members.  *Id.*  Rule 23(e) requires notice that describes

23   "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

24   and to come forward and be heard."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946

25   (9th Cir. 2015).  Furthermore, the PSLRA requires that the notice contain (i) a statement of the

26   recovery; (ii) a statement of the potential outcome of the case; (iii) a statement of attorneys' fees

27   and costs; (iv) identification of the lawyers; (v) reasons for settlement; (vi) other information the

28   court requires; and (vii) a cover page summarizing that information.  *See* 15 U.S.C. § 78u-4(a)(7).

13

1    Here, the Settlement Notice, which along with the Proof of Claim form, will be sent by U.S.

2  mail to Class Members and will be available on the website

3  www.GeronCorporationSecuritiesLitigation. com, and the Publication Notice, which will be

4  published in *Investor's Business Daily* and posted by *PR Newswire*, have been carefully drafted to

5  notify the Class of the terms of the Settlement, the Class Members' rights in connection with the

6  Settlement, and the date of the Final Fairness Hearing in compliance with Rules 23(c)(2) and 23(e),

7  the PSLRA, and due process.  Indeed, the content of the Settlement Notice includes (i) the case

8  caption; (ii) a description of the claims in the Action; (iii) a description of the settlement Class; (iv)

9  the names of counsel for the settlement Class; (v) the amount of attorneys' fees and expenses that

10  will be requested by Lead Counsel; (vi) the Final Fairness Hearing date; (vii) a description of the

11  settlement Class Members' opportunity to appear at the hearing; (viii) a statement of the deadline

12  for filing objections to and exclusions from the Settlement; (ix) the consequences of exclusion; (x)

13  the consequences of remaining in the settlement Class; and (xi) the manner in which to obtain more

14  information.

15    The parties have agreed to use the traditional methods for notifying the Class Members:

16  notification by mail and by publication by wire service, in a national newspaper focusing on

17  investors, and on a designated website.  This manner of providing notice represents the best notice

18  practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due

19  process.  *See, e.g.*, *In re Portal Software*, *Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *18-19

20  (N.D. Cal. June 30, 2007) (dissemination of notice to all reasonably identifiable class members and

21  published summary notice approved as best practical).  Furthermore, Epiq Systems, Inc. ("Epiq")

22  has been retained to administer notice of the Settlement.  Epiq's estimated administration expenses

23  are $250,000.  These administration expenses will amount to only $0.003 per share of common

24  stock, which is a very reasonable amount given the high quality Epiq's services.  Accordingly, Lead

25  Plaintiff respectfully requests that the Court approve the Notices and the procedures for their

26  dissemination.

27

28

## IV.    The Proposed Schedule Of Events

No later than twenty days after entry of the Preliminary Approval Order (the "Notice Date"), the Claims Administrator will notify Class Members of the Settlement by mailing a copy of the Settlement Notice and Proof of Claim form, substantially similar to the form attached as Exhibits A-1 & A-2 to the Stipulation, and will post a copy of the Settlement Notice and Proof of Claim form on the website established for the Action.  Then, not later than ten calendar days after mailing of the Settlement Notice, the Publication Notice shall be published once in a national edition of *Investor's Business Daily* and posted on *PR Newswire*.  In connection with preliminary approval of the Settlement, the Court must set notice and objection deadlines.  The Settling Parties respectfully propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Settlement Notice to Class Members and posting the Settlement Notice on website ("Notice Date") | 20 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Publication Notice | 10 calendar days after the Notice Date |
| Filing proof of mailing and publication of Notices | 40 calendar days before the Final Fairness Hearing |
| Filing of briefs in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's fee and expense request | 40 calendar days before the Final Fairness Hearing |
| Response deadline for Objections and Exclusions | 25 calendar days before the Final Fairness Hearing |
| Filing of reply memoranda in response to any objection | 7 calendar days before the Final Fairness Hearing |
| Final Fairness Hearing | The week of June 5, 2017, or at the Court's earliest convenience thereafter (at least 100 days after the Preliminary Approval Order) |
| Deadline for submitting Proofs of Claim | 75 calendar days after the Notice Date |

## CONCLUSION

Lead Plaintiff respectfully requests that this Court (a) preliminarily approve the proposed Settlement and schedule a Final Fairness Hearing; (b) preliminarily certify the proposed settlement Class, appoint Lead Plaintiff as settlement Class Representative and the Faruqi Firm as settlement Class Counsel; and (c) approve the proposed forms of notice and the proposed notice plan.

Dated: March 2, 2017                    **FARUQI & FARUQI, LLP**

By: *_/s/ Richard W. Gonnello_*

Richard W. Gonnello

Richard W. Gonnello (admitted *pro hac vice*)
Megan M. Sullivan (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
       msullivan@faruqilaw.com
       klenahan@faruqilaw.com

Barbara Rohr  SBN 273353
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on March 2, 2017, I authorized the electronic filing of the foregoing

3   with the Clerk of the Court using the CM/ECF system which will send notification of such

4   filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

5                                              By:       */s/ Richard W. Gonnello*
                                                          Richard W. Gonnello
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:14-cv-01224-CRB In re: GERON CORPORATION SECURITIES LITIGATION

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ryan Edward Blair**
  rblair@cooley.com,chourani@cooley.com

- **Elaine Chang**
  echang@glancylaw.com

- **Brett Hom De Jarnette**
  bdejarnette@cooley.com,galancr@cooley.com

- **John C. Dwyer**
  dwyerjc@cooley.com,giovannonib@cooley.com

- **Nadeem Faruqi**
  nfaruqi@faruqilaw.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  michael@goldberglawpc.com

- **Richard W. Gonnello**
  rgonnello@faruqilaw.com,msullivan@faruqilaw.com,ecf@faruqilaw.com,dbehnke@faruqilaw.com

- **Katherine M. Lenahan**
  klenahan@faruqilaw.com

- **Kim Elaine Miller**
  kimmiller225@yahoo.com,kim.miller@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Barbara Ann Rohr**
  brohr@faruqilaw.com,smarton@faruqilaw.com,bheikali@faruqilaw.com,ecf@faruqilaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Alan William Sparer**
  asparer@sparerlaw.com,nblake@sparerlaw.com,dcorkran@sparerlaw.com,playzer@sparerlaw.com

- **Megan M Sullivan**
  msullivan@faruqilaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`