1   Richard W. Gonnello (admitted *pro hac vice*)
    Megan M. Sullivan (admitted *pro hac vice*)
2   Katherine M. Lenahan (admitted *pro hac vice*)
    **FARUQI & FARUQI, LLP**
3   685 Third Avenue, 26th Floor
    New York, NY 10017
4   Telephone: 212-983-9330
    Facsimile: 212-983-9331
5   Email: rgonnello@faruqilaw.com
            msullivan@faruqilaw.com
6           klenahan@faruqilaw.com

7   Barbara Rohr SBN 273353
    **FARUQI & FARUQI, LLP**
8   10866 Wilshire Boulevard, Suite 1470
    Los Angeles, CA 90024
9   Telephone: 424-256-2884
    Facsimile: 424-256-2885
10  Email: brohr@faruqilaw.com

11  *Attorneys for Lead Plaintiff*

12

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15                 **SAN FRANCISCO DIVISION**

16  |  | Case No. 3:14-CV-01224-CRB |
    |---|---|
17  | In re GERON CORPORATION SECURITIES | **LEAD PLAINTIFF'S NOTICE OF** |
    | LITIGATION | **MOTION AND MOTION FOR FINAL** |
18  |  | **APPROVAL OF THE CLASS ACTION** |
    |  | **SETTLEMENT, AND MEMORANDUM** |
19  |  | **OF POINTS AND AUTHORITIES IN** |
    |  | **SUPPORT THEREOF** |
20  |  |  |
    | This Document Relates To: | Judge:  Hon. Charles R. Breyer |
21  |  | Hearing Date: July 21, 2017 |
    |        ALL ACTIONS | Time:  10:00 A.M. |
22  |  | Courtroom:  6, 17th Floor |
23  |  | UNDERLINE CONSOLIDATED CLASS ACTION |

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2        PLEASE TAKE NOTICE that on July 21, 2017, at 10:00 a.m., in Courtroom 6 on the 17th

3  Floor before the Honorable Charles R. Breyer at the United States District Court for the Northern

4  District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA

5  94102, Lead Plaintiff Vinod Patel hereby moves for an order granting (i) final approval of the

6  proposed settlement of this action; (ii) final certification of the proposed class for purposes of

7  settlement; and (iii) final approval of the proposed plan of allocation.

8        This motion is based upon the Memorandum of Points and Authorities for Final Approval of

9  the Class Action Settlement set forth below, the Declaration of Nadeem Faruqi in support of the

10  Motion for Final Approval of the Class Action Settlement and the Motion for Approval of

11  Attorneys' Fees and Reimbursement of Expenses, with attached exhibits, and the pleadings and

12  records on file in this action, and other such matters and argument as the Court may consider at the

13  hearing of this motion.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2   NOTICE OF MOTION AND MOTION.................................................................................... i

3   STATEMENT OF ISSUES TO BE DECIDED .....................................................................v

4   SUMMARY OF THE ARGUMENT .....................................................................................v

5   MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

6   I.    FACTUAL AND PROCEDURAL BACKGROUND ....................................................1

7         A.  Description of the Action .........................................................................................1

8         B.  The Proposed Settlement ........................................................................................3

9   II.   ARGUMENT ...................................................................................................................4

10        A.   The Proposed Settlement Merits Final Approval ...................................................4

11             1.    The Proposed Settlement Is Not the Result of Collusion ..........................4

12             2.    The Proposed Settlement Is Fair, Adequate, and Reasonable ...................6

13                   a.    The Strength of the Case and Risks and Expense Inherent to

14                         Further Litigation Support Final Approval ....................................6

15                   b.    The Risks Facing Class Certification Support Final Approval ......8

16                   c.    The Amount of the Settlement Supports Final Approval..............8

17                   d.    The Stage of the Proceedings Supports Final Approval...............10

18                   e.    The Experience of Counsel Supports Final Approval.................11

19                   f.    The Reaction of the Class Supports Final Approval ...................12

20        B.   The Plan of Allocation Is Fair and Reasonable ...................................................12

21        C.   The Notice Program Satisfied Rule 23, the PSLRA, and Due Process................14

22        D.   The Class Should Be Certified For Settlement Purposes ....................................15

23   III.  CONCLUSION ............................................................................................................15

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*In re Am. Apparel S'holder Litig.*,
   2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) ...................................... vii, 12, 13

*In re Bear Stearns Cos.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................................... v, 5

*In re Celera Corp. Secs. Litig.*,
   2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015) ................................. vii, 7, 12, 14

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .................................................................................................9

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010)................................................................................12

*Churchill Village, L.L.C. v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) ......................................................................................... vi, 6

*In re Citigroup Sec. Litig.*,
   2014 U.S. Dist. LEXIS 69382 (S.D.N.Y. May 20, 2014) .....................................................9

*In re Cylink Sec. Litig.*,
   274 F. Supp. 2d 1109 (N.D. Cal. 2003)................................................................................8

*Destefano v. Zynga, Inc.*,
   2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) .........................................4, 6, 10

*Gudimetla v. Ambow Educ. Holding*,
   2015 U.S. Dist. LEXIS 187106 (C.D. Cal. Mar. 16, 2015) ..................................................9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) .......................................................................................................8

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21, 2016) ............................................ v, 4

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)...................................................13

*In re High-Tech Emple. Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sept. 2, 2015)..................................................13

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 U.S. Dist. LEXIS 151498 (D. Nev. Oct. 19, 2012) ......................................9

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............................................11

*Johansson-Dohrmann v. CBR Sys.*,
    2013 U.S. Dist. LEXIS 103863 (S.D. Cal. July 24, 2013) ..............................6, 7

*Klee v. Nissan N. Am., Inc.*,
    2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015) ..................................6

*Lane v. Facebook, Inc.*,
    2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) ................................8

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .........................................................4, 9

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................8, 11

*Nobles v MBNA Corp.*,
    2009 U.S. Dist. LEXIS 59435 (N.D. Cal. 2009) (Breyer, J.)..............................4, 7

*Officers for Justice v. Civil Service Com.*,
    688 F.2d 615 (9th Cir. 1982) ..........................................................8, 9

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007).................................................8, 12

*Ramirez v. Ghilotti Bros.*,
    2014 U.S. Dist. LEXIS 56038 (N.D. Cal. Apr. 21, 2014) (Breyer, J.)....................11

*Rieckborn v. Velti PLC*,
    2015 U.S. Dist. LEXIS 13542 (N.D. Cal. Feb. 3, 2015)..................................5, 11

*Roberti v. OSI Sys.*,
    2015 U.S. Dist. LEXIS 164312 (C.D. Cal. Dec. 8, 2015).................................6

*Rubio-Delgado v. Aerotek, Inc.*,
    2015 U.S. Dist. LEXIS 75300 (N.D. Cal. June 10, 2015)................................9, 10

*Ruch v. Am Retail Grp., Inc.*,
    2016 U.S. Dist. LEXIS 133832 (N.D. Cal. Sept. 28, 2016)..............................v, 5

**Other Authorities**

Fed. R. Civ. P. 23(e)(2) .................................................................. vi, 4

## STATEMENT OF ISSUES TO BE DECIDED

1.      Should final approval of the proposed settlement be granted?

2.      Should the proposed class be certified for settlement purposes and should Lead Plaintiff be appointed as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") appointed as Class Counsel?

3.      Should final approval of the plan of allocation be granted?

## SUMMARY OF THE ARGUMENT

After more than three years of intensive litigation, Lead Plaintiff seeks final approval of a proposed settlement of this putative class action (the "Action") for $6,250,000 (the "Settlement"). The Settlement represents a certain and substantial recovery for the members of the proposed Settlement Class (the "Class Members") and (1) "is not the product of collusion among the negotiating parties" and (2) "is fundamentally fair, adequate, and reasonable[.]" *Hayes v. MagnaChip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *13 (N.D. Cal. Nov. 21, 2016).

**The Settlement Is Not The Result of Collusion**

The Settlement is not the result of so-called "obvious collusion." The terms of the Settlement were reached with the assistance of experienced Mediator Judge Layn Phillips (Ret.) at an in-person mediation session and through the course of numerous conference calls thereafter. *See Ruch v. Am Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 133832, at *25-26 (N.D. Cal. Sept. 28, 2016) (finding no collusion when the parties "participated in a formal private mediation, then spent several weeks negotiating the details of the Settlement Agreement and the class notice.").

The Settlement is also not the result of subtle collusion as identified by *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Lead Counsel is only requesting attorneys' fees in the amount of 25% of the Settlement Fund after deduction of Litigation Expenses, and there is no clear sailing provision or kicker provision reverting unpaid fees to Defendants. *See Bluetooth*, 654 F.3d at 947.

## The Settlement Is Fair, Adequate, and Reasonable

Rule 23(e) provides that a class action settlement must receive court approval.  A court should approve a class action settlement if it determines that the settlement is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  When determining whether a settlement satisfies Rule 23(e), courts in this Circuit consider the following list of non-exhaustive factors:  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement.  *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004).

The Settlement here warrants approval based on these factors.  First, while Lead Plaintiff believes that his claims have substantial merit, he believes that the risks imposed by future litigation supports the reasonableness of the immediate and certain benefit provided by the Settlement.  For example, completion of fact discovery would be very time consuming and costly, and might only result in the claims being dismissed at summary judgment or trial, leaving the Class with no recovery.

Second, Defendants communicated several arguments that they intended to raise in response to Lead Plaintiff's class certification motion, which was filed before the Action was stayed for settlement negotiations.  The Court may find these arguments persuasive and decide against certifying the Class.

Third, the Settlement Amount represents an excellent result for the Class.  $6,250,000 is 4.9% of the maximum damages Lead Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent activity.  This is much higher than the median ratio of settlement amounts to investor losses for 2016 which NERA Economic Consulting determined was 2.1%.

Fourth, Lead Counsel and Defense Counsel both have extensive experience litigating and settling securities class actions and Lead Counsel believes that the Settlement represents an excellent result for the Class.

1  Finally, the Class's reaction to the Settlement thus far has been overwhelmingly positive.

2  As of June 9, 2017, not one Class member has objected to the Settlement, Plan of Allocation, or

3  request for attorneys' fees and expenses, and as of June 6, 2017 one Class member submitted an

4  exclusion with no supporting documentation.

5  **The Plan of Allocation Is Fair, Adequate, and Reasonable**

6  "Approval of a plan of allocation of settlement proceeds in a class action under FRCP 23 is

7  governed by the same standards of review applicable to approval of the settlement as a whole: the

8  plan must be fair, reasonable and adequate."  *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist.

9  LEXIS 184548, at *60 (C.D. Cal. July 28, 2014).

10  The Plan of Allocation in this case was designed by Lead Plaintiff's economic expert to

11  provide each Authorized Claimant with its *pro rata* share of the Net Settlement Fund.  The amount

12  recovered per share will vary depending upon when in relation to the series of corrective disclosures

13  each previously purchased share was sold.  Lead Plaintiff respectfully submits that the Plan of

14  Allocation is fair and reasonable.

15  **The Notice Program Satisfied Rule 23, the PSLRA, and Due Process**

16  The Settlement Notice and Publication Notice include all of the information that is required

17  by due process, Rule 23(c)(2)(B), Rule 23(e), and the Private Securities Litigation Reform Act of

18  1995, (the "PSLRA"), 15 U.S.C. § 78u-4, and were made available to Class Members through the

19  standard methods of mailing, publication, and a designated website.  *See, e.g.*, *In re Celera Corp.*

20  *Secs. Litig.*, 2015 U.S. Dist. LEXIS 157408, at *12-13 (N.D. Cal. Nov. 20, 2015) (sending notice

21  packets via U.S. mail, publishing a summary notice in *Investor's Business Daily*, and establishing a

22  dedicated settlement website were sufficient to satisfy the notice requirements).  The Settlement

23  Notice has been timely mailed to 37,571 potential Class Members beginning on April 27, 2017 and

24  the Publication Notice was timely published in *Investor's Business Daily* and posted on *PR*

25  *Newswire*.

26  **The Class Should Be Certified For Settlement Purposes**

27  The Court preliminarily certified the proposed Settlement Class on April 10, 2017.  The

28  circumstances have remained the same since preliminary approval; thus Lead Plaintiff respectfully

1   requests that the Court certify the Class set forth in the Stipulation for settlement purposes, appoint

2   Vinod Patel as Class Representative, and appoint Faruqi & Faruqi, LLP as Class Counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff,[1] on behalf of himself and the putative Class, and defendants Geron Corporation ("Geron"), Dr. John A. Scarlett, M.D., Dr. Stephen M. Kelsey, M.D., and Olivia K. Bloom (collectively, "Defendants")[2] have reached a proposed settlement of this Action for $6,250,000 that, if approved, will resolve all claims in the Action.  Lead Plaintiff respectfully submits this memorandum of law in support of his motion and requests that the Court enter the proposed Final Order and Judgment of Dismissal with Prejudice ("Final Order").  The Final Order will, among other things, (1) approve the Settlement on the terms set forth in the Stipulation; (2) certify the Class for settlement purposes; and (3) approve the Plan of Allocation.

The Settlement resulted from arm's-length negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  In light of the significant risk that a smaller recovery—or no recovery at all—might be achieved if the Action were to proceed to trial, and the likely appeals that would follow, the Settlement represents an excellent result for the Class.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Description of the Action

This Action arises out of Geron's allegedly false and misleading statements concerning the Company's phase 2 trial for its drug imetelstat in patients with essential thrombocythemia and polycythemia vera (the "ET Trial").

Commencing on March 14, 2014, two securities class action complaints were filed against Geron, Scarlett, and Bloom bringing claims for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission (the "SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. *See* Faruqi Decl. ¶24.  On May 13, 2014, several plaintiffs moved to be appointed as lead plaintiff

---

[1]     All capitalized terms that are not defined herein shall have the same meaning as those in the Stipulation and Agreement of Settlement dated as of March 2, 2017 (the "Stipulation") (ECF No. 119).  All references to the "Faruqi Decl." are to the Declaration of Nadeem Faruqi in Support of Lead Plaintiff's Motion for Final Approval of the Class Action Settlement and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Faruqi Declaration" or "Faruqi Decl.") filed currently herewith.  All quotations and citations are omitted unless otherwise noted.

[2]     Lead Plaintiff and Defendants are defined herein as the "Settling Parties."

1   and to consolidate the actions.  *See id.* ¶25.  Then, on June 30, 2014, the Court appointed Vinod

2   Patel Lead Plaintiff, approved Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel, and

3   consolidated the actions under the caption *In re Geron Corporation Securities Litigation.  See id.*

4        On September 19, 2014, Lead Plaintiff filed a Consolidated Class Action Complaint (the

5   "CAC") adding Kelsey as a defendant.  *See id.* ¶26.  The CAC alleges that in December 2012,

6   Defendants began to present the preliminary results for the first 14 out of 18 total patients enrolled

7   in the ET Trial stating that "[l]ong-term administration of imetelstat was generally well tolerated[,]"

8   but disclosed that the liver function tests ("LFTs") from 92.9% of patients showed elevations in the

9   liver enzymes in "All Grades" and 14.3% of patients experienced Grade 3 elevations.  CAC at ¶56.

10   Three months later, on March 13, 2013, Geron disclosed more robust safety data from the ET Trial

11   showing more serious LFT abnormalities and admitting that "because when we presented the data

12   in December at ASH, we basically had to get the pertinent data into 12 slides, . . . ***I don't think that***

13   ***the two slides that we presented on safety did full justice to the clinical picture***."  CAC ¶83.  On

14   this news, Geron's stock dropped $0.12 on March 13, 2013. CAC ¶158.

15        Throughout the remainder of the Class Period, Defendants stated that the Company was

16   "continuing to treat and follow patients previously enrolled in the" ET Trial (CAC ¶¶90, 95, 97, 99,

17   101); imetelstat has been "well tolerated" in all patients who had been treated in the ET Trial (CAC

18   ¶¶78, 80, 83, 85, 92, 94, 101, 104, 128); and that "LFT abnormalities do not appear to progressively

19   worsen over time" (CAC ¶¶94, 101, 128).  Defendants failed to disclose that when these statements

20   were made, the Company was not in fact following many of the patients who had been enrolled in

21   the ET Trial, and thus was unaware whether the drug was being well tolerated, whether the LFT

22   abnormalities worsened over time, or whether the LFT abnormalities were reversible.  On March

23   12, 2014, Geron announced that the U.S. Food and Drug Administration (the "FDA") placed a

24   clinical hold on the investigational new drug application for imetelstat due to the occurrence of

25   persistent LFT abnormalities observed in the ET Trial and the risk of chronic liver injury following

26   long-term exposure to imetelstat.  CAC ¶131.  On this news, the price of Geron common stock

27   dropped $2.56 per share, or 61% in one trading day.  CAC ¶133.

28

On April 10, 2015, Senior District Judge Charles R. Breyer held a hearing during which he denied in part and granted in part Defendants' motions to dismiss the CAC.  *See* Faruqi Decl. ¶28. On May 20, 2015 Defendants filed a Motion for Leave to File a Motion for Reconsideration of the April 15, 2015 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint (the "Motion for Leave").  *See id.* ¶29.  Two days later, Defendants filed their Answer to Plaintiff's Consolidated Amended Class Action Complaint and on September 3, 2015 the Court denied the Motion for Leave.  *See id.*  Defendants continue to deny that they committed any acts or omissions giving rise to any liability and/or violations of the law.  *See* Stipulation at 3.

On November 2, 2015, the Settling Parties, hoping to reach a resolution of the Action, met with Judge Phillips for an arm's-length mediation session.  *See id.* ¶32.  Since the Settling Parties were not able to reach an agreement during the session, Defendants agreed to produce certain categories of documents to Lead Plaintiff in order to shed light on their defenses.  *See id.* ¶33.  Lead Counsel reviewed several thousand pages of documents, and then engaged in additional discussions with Defendants' Counsel to debate the merits of the claims.

On December 11, 2015, the Parties began formal discovery by exchanging Rule 26(a)(1) Initial Disclosures and thereafter serving document requests, third-party subpoenas, and noticing Lead Plaintiff's deposition.  *See id.* ¶¶34-36.  On August 12, 2016, Lead Plaintiff filed his Motion for Class Certification.  *See id.* ¶37.  The Settling Parties then sought leave to stay the class certification briefing schedule in order to engage in an additional mediation discussions.  *See id.* ¶38.  After substantial discussions with the assistance of Judge Phillips, on November 11, 2016, the Settling Parties were able to reach an agreement in principle to settle the claims and then worked over the course of several months to finalize the terms of the Stipulation.  *See id.*

### B.     The Proposed Settlement

The Settlement, which was reached after extensive pre-trial investigation, briefing, formal discovery, consultation with experts, and arm's-length negotiations conducted in good faith, provides that Defendants will cause the amount of $6,250,000 to settle all claims asserted against them in the Action.  *See id.* ¶49.  The Settlement Amount will be paid into escrow and, after paying

1  attorneys' fees and expenses approved by the Court, and other costs of settlement, the Net

2  Settlement Amount will be distributed among the Class Members with Recognized Losses who

3  timely submit valid Proof of Claim forms (the "Authorized Claimants"). *See id.* ¶51.

4  **II.   ARGUMENT**

5      **A.   The Proposed Settlement Merits Final Approval**

6        Rule 23(e) provides that a class action settlement must receive court approval.  A court

7  should approve a class action settlement if it determines that the settlement is "fair, reasonable, and

8  adequate[.]"  Fed. R. Civ. P. 23(e)(2).  While the authority to grant such an approval lies within the

9  court's discretion, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly

10  where complex class action litigation is concerned." *See Linney v. Cellular Alaska P'ship*, 151

11  F.3d 1234, 1238 (9th Cir. 1998).  Indeed, as this Court has explained, "intrusion upon what is

12  otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

13  limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of

14  fraud or overreaching by, or collusion between, the negotiating parties." *Nobles v MBNA Corp.*,

15  2009 U.S. Dist. LEXIS 59435, at *5 (N.D. Cal. 2009) (Breyer, J.).  Thus, when deciding whether to

16  approve a settlement, the court must ensure that (1) "the settlement is not the product of collusion

17  among the negotiating parties" and (2) that the "settlement is fundamentally fair, adequate, and

18  reasonable[.]" *Hayes v. MagnaChip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *13

19  (N.D. Cal. Nov. 21, 2016).

20      **1.   The Proposed Settlement Is Not the Result of Collusion**

21        "In [*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)], the

22  Ninth Circuit explained that when a settlement agreement is negotiated *prior* to formal class

23  certification," the court must also analyze whether the settlement was reached as a result of

24  collusion between the parties. *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *28

25  (N.D. Cal. Feb. 11, 2016).  In addition to obvious signs of collusion, *Bluetooth* identified three

26  subtle signs of collusion: (1) when class counsel receives a disproportionate percentage of the

27  settlement; (2) when the parties negotiate a "clear sailing" agreement separate from the settlement

28  funds; and (3) when the parties arrange for fees not paid to revert to defendants. *See id.*

1    Here, there was no collusion.  After contentiously litigating this Action for several years and

2    analyzing the risks and costs of moving forward with the Action, the Settling Parties engaged Judge

3    Layn Phillips (Ret.), a well-respected and highly experienced mediator, to assist them in exploring a

4    potential resolution of the Action.  *See* Faruqi Decl. ¶32.  On November 2, 2015, the Settling Parties

5    met with Judge Phillips for an arm's-length mediation session.  *See id.*  During the session, the

6    parties extensively debated the strengths and weaknesses of Lead Plaintiff's claims and the defenses

7    available to Defendants; however the Settling Parties were not able to reach a resolution at that

8    time.  *See id.* ¶¶32, 33.  To facilitate mediation discussions, Geron agreed to produce certain

9    categories of documents to Lead Plaintiff, including the FDA regulatory file.  *See id.* ¶33.  After

10   reviewing several thousand pages of documents, Lead Plaintiff and Defendants engaged in

11   additional mediation sessions, whereby the parties presented their strongest arguments.  *See id.*

12   After numerous conferences, commencement of formal discovery, and Lead Plaintiff's class

13   certification motion, on November 11, 2016, the Settling Parties were able to reach an agreement in

14   principle to settle the claims against Defendants and then worked over the course of several months

15   to finalize the terms of the Stipulation.  *See id.* ¶38.  Thus, the Settling Parties did not obviously

16   engage in collusion when entering into the Settlement.  *See Ruch v. Am Retail Grp., Inc.*, 2016 U.S.

17   Dist. LEXIS 133832, at *25-26 (N.D. Cal. Sept. 28, 2016) (finding no collusion when the parties

18   "participated in a formal private mediation, then spent several weeks negotiating the details of the

19   Settlement Agreement and the class notice.").

20   None of the subtle factors indicating collusion are present here either.  Lead Counsel has

21   requested an award of attorneys' fees equal to 25% of the Settlement Fund, after deduction of the

22   Litigation Expenses.  *See* Faruqi Decl. ¶72.  This percentage is the benchmark in the Circuit and

23   often awarded in similar actions, thus weighing against a finding of collusion.  *See Rieckborn v.*

24   *Velti PLC*, 2015 U.S. Dist. LEXIS 13542, at *29 (N.D. Cal. Feb. 3, 2015) (finding 25% fee and

25   $219,000 in litigation expenses weighed against finding of collusion).  A "clear sailing" agreement

26   exists when the parties negotiate . . . [an] arrangement providing for the payment of attorneys' fees

27   separate and apart from class funds[.]"  *Bluetooth*, 654 F.3d at 947.  There is no such arrangement

28   here as the attorneys' fees are to be paid only out of the Settlement Fund, and at a rate approved by

1    the Court.  *See* Stipulation ¶19.  Indeed, Defendants specifically stipulate that they are not

2    responsible for paying any attorneys' fees.  *See id.*  Further, even if there were such an agreement,

3    "despite the presence of a clear sailing agreement, . . . the absence of a 'kicker provision' stating

4    that all fees not awarded would revert to defendants, weighs against a finding of collusion."  *Klee v.*

5    *Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 88270, at *32 (C.D. Cal. July 7, 2015).  In this case,

6    any attorneys' fees requested but denied by the Court would remain in the Class's Settlement Fund.

7          Therefore, because the terms of the Settlement were negotiated at arm's-length over the

8    course of many months with the help of an esteemed mediator, the Settlement is not the result of

9    collusion between the parties.  *See Roberti v. OSI Sys.*, 2015 U.S. Dist. LEXIS 164312, at *9-10

10   (C.D. Cal. Dec. 8, 2015) (full day mediation session and subsequent discussions with the help of an

11   experienced mediator supported finding that settlement was not the result of collusion).

12              **2.    The Proposed Settlement Is Fair, Adequate, and Reasonable**

13         When determining whether a settlement satisfies Rule 23(e), courts in this Circuit consider

14   the following list of non-exhaustive factors:  (1) the strength of the plaintiff's case; (2) the risk,

15   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action

16   status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

17   completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

18   presence of a government participant;[3] and (8) the reaction of the class members to the proposed

19   settlement.  *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004).  "The

20   Court need not consider all of these factors, or may consider others."  *Zynga, Inc.*, 2016 U.S. Dist.

21   LEXIS 17196, at *27-28.  As discussed below, the relevant factors support final approval.

22              **a.    The Strength of the Case and Risks and Expense Inherent to**
23                   **Further Litigation Support Final Approval**

24         Factors one and two support final approval.  When determining the reasonableness of the

25   settlement, "the Court must balance against the continuing risks of litigation (including the

26   strengths and weaknesses of the plaintiff's case), the benefits afforded to members of the Class, and

27

28   [3]     The seventh factor is not relevant in this Action because there was no government
     participant; thus Lead Plaintiff will not analyze that factor.

1  the immediacy and certainty of a substantial recovery." *Johansson-Dohrmann v. CBR Sys.*, 2013

2  U.S. Dist. LEXIS 103863, at *11-12 (S.D. Cal. July 24, 2013).  While "there is no particular

3  formula by which the outcome must be tested" when "assessing the strength of a plaintiff's case,"

4  "[t]he court may presume that through negotiation, the Parties, counsel, and mediator arrived at a

5  reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *In re Celera*

6  *Corp. Sec. Litig.*, 2015 U.S. Dist. LEXIS 157408, at *15 (N.D. Cal. Nov. 20, 2015).

7        Lead Plaintiff has always believed that his claims have merit and would be proven true

8  through further fact discovery.  Despite this confidence, Lead Plaintiff is aware of the substantial

9  risks and expenses that would be presented by further litigation based on his work to date.

10        It is well known that class action litigation is inherently complex, *see Nobles*, 2009 U.S.

11  Dist. LEXIS 59435, at *5 (finding a proposed settlement proper "given the inherent difficulty of

12  prevailing in class action litigation"), and this case in particular involves very complex securities

13  fraud rules and statutes, clinical trial data, and the FDA's vast regulatory scheme.  In order to

14  develop the claims in the CAC, further completion of the fact discovery process would require,

15  among other things, likely initiating litigation against the FDA to compel it to produce documents

16  in its possession, engaging in discovery motion practice, producing and reviewing at least hundreds

17  of thousands of pages of documents, taking numerous depositions, and retaining medical and

18  financial expert witnesses.  Over the past three years of litigation, Defendants have vehemently

19  denied any wrongdoing and would continue to aggressively litigate this Action at each step.  Thus,

20  even after the considerable time and expense of additional discovery, which would span several

21  more years, there is a chance Lead Plaintiff's claims could be dismissed at summary judgment.

22  Even if the claims were to survive summary judgment, trial would be very time consuming and

23  expensive and would monopolize valuable court resources.  Indeed, the medical issues present in

24  this case would likely boil down to a "battle of the experts" at trial, creating the risk that the jury

25  may believe Defendants' expert over Lead Plaintiff's and find in in Defendants' favor.  Thus, after

26  the expense and time devoted to taking this Action to trial, the Class could be left with no recovery

27  at all.  Even further, this Action would not necessarily end after a trial; the losing party might

28  appeal the decision, leading to additional years of protracted litigation.

1   "In most situations, unless the settlement is clearly inadequate, its acceptance and approval

2   are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural*

3   *Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Here, this factor

4   also weighs in support of final approval as the insurance policies used to pay the Settlement would

5   have been significantly depleted through further litigation, leaving Lead Plaintiff with only the

6   Company and Individual Defendants as sources of recovery. *See In re Cylink Sec. Litig.*, 274 F.

7   Supp. 2d 1109, 1111 (N.D. Cal. 2003) (considering future depletion of "wasting" insurance policies

8   when granting final approval of settlement).

9               **b.      The Risks Facing Class Certification Support Final Approval**

10              In regard to the third factor, Lead Plaintiff would have faced several obstacles in obtaining

11   class certification in this Action. Lead Plaintiff filed a motion for class certification on August 12,

12   2016 which was accompanied by a market efficiency report prepared by Lead Plaintiff's expert.

13   *See* Faruqi Decl. ¶37. Before Lead Plaintiff filed his motion, however, Defendants informed Lead

14   Plaintiff that they intend to oppose the motion and to argue that Lead Plaintiff cannot show price

15   impact. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2416 (2014). The class

16   certification process would have devolved into a battle of the parties' experts after which the Court

17   may have sided with Defendants. *See* Faruqi Decl. ¶44. As the court in *In re Omnivision Techs.*,

18   559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) explained, "[i]f the Court were to refuse certification,

19   the unrepresented potential plaintiffs would likely lose their chance at recovery entirely . . . As

20   Defendants agree to the class certification for the purposes of the Settlement, there is much less risk

21   of anyone who may have actually been injured going away empty-handed." Although, even if the

22   court certifies a class, "[t]he risk that a class action may be decertified at any time generally weighs

23   in favor of approving a settlement." *Lane v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 24762, at *17

24   (N.D. Cal. Mar. 17, 2010).

25              **c.      The Amount of the Settlement Supports Final Approval**

26              As the Ninth Circuit has noted, "[t]he proposed settlement is not to be judged against a

27   hypothetical or speculative measure of what *might* have been achieved by the negotiators. . . .";

28   rather, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning

1  of highest hopes." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982).

2  Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery

3  does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be

4  disapproved." *Linney*, 151 F.3d at 1242.

5      The Settlement Amount of $6.25 million provides an excellent recovery for the Class and

6  constitutes a material percentage of the likely provable damages suffered by the Class.  It is

7  currently estimated that if Class Members submit claims for 100% of the shares eligible for

8  distribution, the average distribution per share of common stock will be approximately $0.08 before

9  deduction of Court-approved fees and expenses.  *See* Faruqi Dec., ¶74.  If Lead Plaintiff were to

10  prevail on each of the claims in the CAC at trial, and assuming that 100% of the relevant stock

11  drops are attributable to Defendants' fraud, the damages per share of common stock would be

12  approximately $1.63.  *See id.*  The Settlement Amount is 4.9% of the maximum damages Lead

13  Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent

14  activity.  *See id.*  This is much higher than the median ratio of settlement amounts to investor losses

15  for 2016 which NERA Economic Consulting determined was 2.1%.  *See* Faruqi Decl. Ex. C at 37,

16  Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2016*

17  *Full-Year Review* (NERA 2017).  The percentage is also within the range of typical recoveries in

18  complex securities litigation.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir.

19  2001) (noting that typical recoveries in complex securities class actions range from 1.6% to 14% of

20  estimated damages); *see also Gudimetla v. Ambow Educ. Holding,* 2015 U.S. Dist. LEXIS 187106,

21  at *13 (C.D. Cal. Mar. 16, 2015) (approving settlement that was 5.6% of total damages); *IBEW*

22  *Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 U.S. Dist. LEXIS 151498, at *9-10 (D.

23  Nev. Oct. 19, 2012) (finding settlement that was of 3.5% of maximum damages was "within the

24  median recovery in securities class actions"); *In re Citigroup Sec. Litig.*, 2014 U.S. Dist. LEXIS

25  69382, at *15 (S.D.N.Y. May 20, 2014) (determining settlement amount equal to 2% of the class'

26  out-of-pocket losses "falls squarely within this range of reasonableness").  As one court in this

27  District recently noted, "[a]lthough the proposed settlement is only a small percentage of the total

28  expected recovery at trial, there is no reason, at least in theory, why a satisfactory settlement could

1   not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

2   *Rubio-Delgado v. Aerotek, Inc.*, 2015 U.S. Dist. LEXIS 75300, at *29 (N.D. Cal. June 10, 2015).

3          Furthermore, as discussed above, if this Action were to proceed, there was a possibility that

4   recovery in an amount greater than the Settlement Amount would not be achieved because

5   Defendants would continue to aggressively seek dismissal of the claims against them through

6   summary judgment and trial.  *See* Faruqi Decl. ¶¶39-41.  Thus, the Settlement Amount is not only

7   reasonable, it represents an immediate and certain recovery.

8                    **d.      The Stage of the Proceedings Supports Final Approval**

9          When determining whether the settlement is fair, "the court focuses on whether the parties

10  carefully investigated the claims before reaching a resolution."  *Zynga*, 2016 U.S. Dist. LEXIS

11  17196, at *42.

12         Here, the parties agreed to engage in a mediation session after, *inter alia*, (1) Lead Counsel

13  conducted an extensive investigation into the facts alleged in the Action, reviewing FDA

14  documents, press releases, SEC filings, conference call transcripts, and analyst reports; (2) Lead

15  Counsel researched and drafted the amended complaint; (3) Lead Counsel researched and drafted

16  the motion to dismiss briefing; (4) Lead Counsel consulted with medical experts and a damages

17  expert; and (5) Defendants filed a motion for leave for reconsideration of the motion to dismiss

18  order and an answer to the CAC.  *See* Faruqi Decl. ¶30.  Prior to meeting for the mediation session,

19  the parties submitted mediation briefs that further detailed the validity of their positions.  *See id.*

20  ¶32.  During the mediation session the parties extensively debated the strengths and weaknesses of

21  the case on an arm's-length basis but were not able to reach a resolution.  *See id.*  In an effort to

22  facilitate settlement discussions, Geron agreed to produce several thousand pages of documents

23  which Lead Counsel reviewed.  *See id.* at ¶33.  Shortly thereafter, the parties initiated fact

24  discovery, exchanging initial disclosures, document requests, and interrogatories, and Defendants

25  noticed Lead Plaintiff's deposition.  *See id.* ¶35.  Lead Counsel reviewed the hundreds of pages of

26  documents produced in response to the third party subpoenas and began communication with the

27  FDA in regard to the subpoena duces tecum that Lead Plaintiff had served on the organization.  *See*

28  *id.* ¶36.  Lead Plaintiff also filed a motion for class certification.  *See id.* ¶37.  During this time, the

1    parties continued to engage in settlement discussions with the help of Judge Phillips until they were

2    finally able to reach a resolution on November 11, 2016.  *See id.* ¶38.  Thus, the Settling Parties

3    entered into the Settlement with a comprehensive understanding of the strengths and weaknesses of

4    their positions and the procedural hurdles facing this Action.  In *Velti*, 2015 U.S. Dist. LEXIS

5    13542, at *24, the court found that while the settlement was reached prior to even the filing of a

6    motion to dismiss, "the Settling Parties have shown that their decision to settle was made on the

7    basis of a thorough understanding of the relevant facts and law."  Therefore, this factor also

8    supports final approval.

9                    **e.      The Experience of Counsel Supports Final Approval**

10          "Great weight is accorded to the recommendation of counsel, who are most closely

11   acquainted with the facts of the underlying litigation."  *DIRECTV*, 221 F.R.D. at 528.  "When class

12   counsel is experienced and supports the settlement, and the agreement was reached after arm's

13   length negotiations, courts should give a presumption of fairness to the settlement."  *Ramirez v.*

14   *Ghilotti Bros.*, 2014 U.S. Dist. LEXIS 56038, at *3 (N.D. Cal. Apr. 21, 2014) (Breyer, J.).

15          As set forth in detail in the Faruqi Firm's resume attached as Exhibit D to the Faruqi

16   Declaration, Lead Counsel is a nationally-recognized law firm that has substantial experience

17   litigating and settling securities class action lawsuits.  Defendants' attorneys, Cooley, LLP, is also

18   an excellent law firm that is nationally renowned for its securities litigation practice and the team

19   that litigated this Action have been involved in many pivotal securities class action lawsuits.  *See*

20   Faruqi Decl. ¶76.

21          The Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal

22   authorities and evidence to support the claims asserted against Defendants, the likelihood of

23   prevailing on these claims, the risk, expense, and duration of continued litigation, and the likelihood

24   of subsequent appellate proceedings even if Lead Plaintiff prevailed against Defendants at trial,

25   concluded that the Settlement here is an excellent result for the Class.  *See id.* ¶¶39-48.  Thus, since

26   "[b]oth Parties are represented by experienced counsel[,] . . . their mutual desire to adopt the terms

27   of the proposed settlement, while not conclusive, is entitled to great deal of weight."  *In re Immune*

28   *Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

1

### f.    The Reaction of the Class Supports Final Approval

2      "It is established that the absence of a large number of objections to a proposed class action

3 settlement raises a strong presumption that the terms of a proposed class action settlement are

4 favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043.  "[T]he willingness of the

5 overwhelming majority of the class to approve the offer and remain part of the class presents at

6 least some objective positive commentary as to its fairness." *Celera*, 2015 U.S. Dist. LEXIS

7 157408, at *22.

8      Here, beginning on April 27, 2017, 37,571 Settlement Notices and Proof of Claim forms

9 were mailed to potential Class members. *See* Declaration of Alexander Villanova Regarding (A)

10 Mailing of the Settlement Notice and Proof of Claim Form; (B) Publication of the Publication

11 Notice; and (C) Report on Requests for Exclusion and Objections Received to Date ("Villanova

12 Declaration" or "Villanova Decl.") ¶¶7, 11.  Moreover, the website dedicated to the Settlement

13 went live on April 27, 2017.  *See id.* ¶16.  Also, on May 1, 2017, the Publication Notice was

14 published in *Investor's Business Daily* and posted on *PR Newswire*.  *See id.*  ¶12.  As of June 9,

15 2017, not one Class member has objected to the Settlement, Plan of Allocation, or request for

16 attorneys' fees and expenses.  As of June 6, 2017, Epiq has received one invalid request for

17 exclusion that did not provide any legal authority for exclusion from the Settlement, which is

18 attached as Exhibit B to the Faruqi Declaration.  *See* Villanova Decl., at ¶19; Ex. B.  Indeed, the

19 request did not list any transactions in Geron common stock, therefore, Lead Counsel cannot

20 determine the shareholder's standing to seek exclusion from the Settlement.  *See* Faruqi Decl. ¶62;

21 Ex. B.  Thus, although the time for objections and exclusions has not yet expired, the reaction of the

22 Class thus far greatly emphasizes the adequacy of the Settlement.  *See Chun-Hoon v. McKee Foods

23 Corp.,* 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (concluding, in a case where "[a] total of zero

24 objections and sixteen opt-outs (comprising 4.86% of the class) were made from the class of

25 roughly three hundred and twenty-nine (329) members," that the reaction of the class "strongly

26 supports settlement").

27    ### B.    The Plan of Allocation Is Fair and Reasonable

28      The Court has broad discretion in approving a plan of allocation.  "Approval of a plan of

1   allocation of settlement proceeds in a class action under FRCP 23 is governed by the same

2   standards of review applicable to approval of the settlement as a whole: the plan must be fair,

3   reasonable and adequate."  *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, at

4   *60 (C.D. Cal. July 28, 2014).  "A plan of allocation that reimburses class members based on the

5   extent of their injuries is generally reasonable."  *In re High-Tech Emple. Antitrust Litig.*, 2015 U.S.

6   Dist. LEXIS 118051, at *23-24 (N.D. Cal. Sept. 2, 2015).

7          Here, in developing the Plan of Allocation Lead Counsel enlisted the help of a damages

8   expert who was familiar with the various damages issues in this Action.  *See* Faruqi Decl. ¶68.  The

9   objective of the Plan of Allocation is to distribute a *pro rata* share of the Net Settlement Fund to

10  Authorized Claimants based upon their claimed losses.  *See id.* ¶66.  Specifically, after the

11  Authorized Claimants submit their Proof of Claim forms and supporting documentation, the Claims

12  Administrator will calculate each Authorized Claimants' Recognized Loss according to a formula

13  that will take into account when they purchased the shares and when the shares were sold.  *See id.*

14  In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have

15  purchased common stock during the Class Period and held their stock through at least one of the

16  two corrective disclosures set forth in the Plan.  *See id.*  The amount recovered per share will vary

17  depending upon when in relation to the series of corrective disclosures each share was sold.  *See id.*

18  Authorized Claimants also cannot recover more than their out of pocket losses.  *See In re Heritage*

19  *Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *38-39 (C.D. Cal. June 10, 2005) ("[A] plan of

20  allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized

21  Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative

22  strengths and weaknesses of class members' individual claims and the timing of purchases of the

23  securities at issue.").

24         The terms of the Plan of Allocation were fully disclosed in the Settlement Notice that was

25  mailed to 37,571 potential Class Members and nominees and posted on the website

26  www.GeronCorporationSecuritiesLitigation.com.  *See* Villanova Decl. ¶¶11, 15; Villanova Decl.,

27  Ex. A at 6-9.  To date, there have been no objections to the Plan.  *See* Faruqi Decl. ¶69.  Thus, for

28  the reasons set forth herein and the Faruqi Declaration, the Plan of Allocation should be approved.

13

1

**C.     The Notice Program Satisfied Rule 23, the PSLRA, and Due Process**

2       Notice of a class action settlement must meet the requirements of Rule 23 of the Federal

3  Rules of Civil Procedure, the PSLRA, and the due process clause of the United States Constitution.

4  Rules 23(c)(2)(B) and 23(e)(1) require the Court to direct to potential settlement class members

5  "the best notice that is practicable under the circumstances" and "in a reasonable manner."  The

6  PSLRA and the due process clause impose similar requirements.

7       The Court preliminarily approved the form, content, and method of dissemination of the

8  Settlement Notice and the Publication Notice (the "Notices") provided to potential Class Members.

9  *See* ECF No. 125.  Pursuant to the Preliminary Approval Order, the Settlement Notice has been

10  mailed to 37,571 potential Class Members beginning on April 27, 2017.  *See* Villanova Decl. ¶¶7,

11  11.  That same day, the Settlement Notice and the Proof of Claim form were also made available on

12  www.GeronCorporationSecuritiesLitigation.com.  *See id.* ¶¶15, 16.  The settlement website has

13  been visited 1,030 times as of June 6, 2017.  *See id.* ¶16.  The Publication Notice was published in

14  *Investor's Business Daily* and posted by *PR Newswire* on May 1, 2017.  *See id.* ¶12.

15       Pursuant to the requirements of Rule 23, the due process clause, PSLRA, and Northern

16  District Guidelines, the Settlement Notice included: (i) the case caption; (ii) a description of the

17  claims; (iii) a description of the Settlement Class; (iv) the names of Lead Counsel; (v) the amount

18  of attorneys' fees and expenses that will be requested; (vi) the Final Fairness Hearing date; (vii) the

19  Class Members' opportunity to appear at the Final Fairness Hearing; (viii) the deadline for filing

20  objections to and exclusions from the Settlement; (ix) the consequences of exclusion; (x) the

21  consequences of remaining a Class Member; (xi) the manner in which to obtain more information;

22  and (xii) directions on how to access the case docket.  *See* Villanova Decl., Ex A.

23       Courts in this Circuit have routinely found that this method of mailing, publication, and

24  internet notice satisfies the applicable notice standards in similar class actions.  *See Celera*, 2015

25  U.S. Dist. LEXIS 157408, at *12-13 (sending notice packets via U.S. mail, publishing a summary

26  notice in Investor's Business Daily, and establishing a dedicated settlement website were all

27  sufficient to satisfy the notice requirements).  Thus, Lead Plaintiff respectfully requests that the

28  Court find the notice program satisfied the requirements of Rule 23, the PSLRA, and due process.

### D.     The Class Should Be Certified For Settlement Purposes

Pursuant to the Preliminary Approval Order, the Court conditionally certified the Class for Settlement purposes.  *See* ECF No. 125.  Since the entry of that Order, no circumstances have changed to alter the propriety of the Court's certification and appointments.  *See In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally certifying a settlement class where there had been no material changes since the court preliminarily certified the class).  Thus, pursuant to Rules 23(a) and (b)(3), and for the reasons set forth below and in further detail on pages 9 to 13 of the Memorandum of Law in Support of Lead Plaintiff's Motion for Preliminary Approval of the Class Action Settlement (ECF No. 120), Lead Plaintiff respectfully requests that the Court finally certify the following Class for purposes of Settlement:

> Lead Plaintiff as well as all Persons who purchased or otherwise acquired Geron common stock during the Class Period and who allege to have been damaged thereby.  Excluded from the Class are Defendants named herein; Persons who suffered no compensable losses (*e.g.*, those who purchased Geron common stock during the Class Period but sold prior to any partial corrective disclosure); members of the immediate family of the Individual Defendants; the officers and directors of Geron; any firm, trust, partnership, corporation, officer, director, or other individual or entity in which any Defendants have a controlling interest; and the legal representatives, heirs, successors-in-interest or assigns of such excluded Persons. Also excluded from the Class is any Person who properly excludes himself, herself, or itself by filing a valid and timely request for exclusion in accordance with the requirements to be set forth in the Settlement Notice.

Stipulation ¶1.e, ECF No. 140.  Lead Plaintiff also respectfully requests that the Court finally appoint Vinod Patel as Class Representative and the Faruqi Firm as Class Counsel.

## III.   CONCLUSION

For the reasons stated above, Lead Plaintiff respectfully request that this Court (a) grant final approval of the proposed Settlement; (b) certify the proposed settlement Class, appoint Lead Plaintiff as settlement Class Representative, and the Faruqi Firm as settlement Class Counsel; and (c) grant approval of the Plan of Allocation.

Dated: June 9, 2017                    **FARUQI & FARUQI, LLP**

By: _/s/ Richard W. Gonnello_
Richard W. Gonnello

15

Richard W. Gonnello (admitted *pro hac vice*)
Megan M. Sullivan (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        msullivan@faruqilaw.com
        klenahan@faruqilaw.com

Barbara Rohr  SBN 273353
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Lead Plaintiff*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on June 9, 2017, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such

4  filing to the e-mail addresses denoted on the Electronic Mail Notice List.

5                          By:         */s/ Richard W. Gonnello*
                                       Richard W. Gonnello
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:14-cv-01224-CRB In re: GERON CORPORATION SECURITIES LITIGATION

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ryan Edward Blair**
  rblair@cooley.com,chourani@cooley.com

- **Elaine Chang**
  echang@glancylaw.com

- **Brett Hom De Jarnette**
  bdejarnette@cooley.com,galancr@cooley.com

- **John C. Dwyer**
  dwyerjc@cooley.com,giovannonib@cooley.com

- **Nadeem Faruqi**
  nfaruqi@faruqilaw.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  michael@goldberglawpc.com

- **Richard W. Gonnello**
  rgonnello@faruqilaw.com,msullivan@faruqilaw.com,ecf@faruqilaw.com,dbehnke@faruqilaw.com

- **Katherine M. Lenahan**
  klenahan@faruqilaw.com

- **Kim Elaine Miller**
  kim.miller@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Barbara Ann Rohr**
  brohr@faruqilaw.com,smarton@faruqilaw.com,bheikali@faruqilaw.com,ecf@faruqilaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Alan William Sparer**
  asparer@sparerlaw.com,nblake@sparerlaw.com,dcorkran@sparerlaw.com,playzer@sparerlaw.com

- **Megan M Sullivan**
  msullivan@faruqilaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)