Richard W. Gonnello (admitted *pro hac vice*)
Megan M. Sullivan (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
          msullivan@faruqilaw.com
          klenahan@faruqilaw.com

Barbara Rohr SBN 273353
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Lead Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re GERON CORPORATION SECURITIES LITIGATION | Case No. 3:14-CV-01224-CRB |
| | **LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates To:<br><br>ALL ACTIONS | Judge:  Hon. Charles R. Breyer<br>Hearing Date:  July 21, 2017<br>Time:  10:00 A.M.<br>Courtroom:  6, 17th Floor<br><br>CONSOLIDATED CLASS ACTION |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 21, 2017, at 10:00 a.m., in Courtroom 6 on the 17th Floor before the Honorable Charles R. Breyer at the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Counsel Faruqi & Faruqi, LLP hereby moves for an order (i) awarding attorneys' fees in the amount of $1,519,421.22; (ii) reimbursing expenses in the amount of $172,315.12; and (iii) authorizing an award for Lead Plaintiff in the amount of $10,000.  The grounds for this motion are that the attorneys' fees award, expenses, and incentive award are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases.

This motion is based upon the Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Declaration of Nadeem Faruqi filed herewith, the pleadings and records on file in this action, and other such matters and argument as the Court may consider at the hearing of this motion.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION.................................................................................... i

STATEMENT OF THE ISSUES TO BE DECIDED ............................................................ vi

SUMMARY OF THE ARGUMENT ..................................................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES...........................................................1

I.      PRELIMINARY STATEMENT ................................................................................1

II.     ARGUMENT ............................................................................................................3

        A.      The Requested Fee Is Reasonable In This Case .........................................3

                1.      Percentage of the Fund Is the Preferred Method ........................3

                2.      The Requested Fee of 25% Is Reasonable In This Case ............4

                        a.      Lead Counsel Obtained an Excellent Result for the Class ............4

                        b.      Litigation of This Action Involved Significant Risks ...................5

                        c.      Lead Counsel Provided Quality Representation .........................6

                        d.      Lead Counsel Took on a Financial Burden ..................................7

                        e.      The Fee Is In-Line With the Customary Fee In Similar Actions ...8

                3.      The Requested Fee Is Reasonable Under the Lodestar Cross-Check ........9

                4.      The Reaction of the Class Supports the Requested Fee ...........................10

        B.      The Litigation Expenses Are Reasonable and Were Necessarily Incurred..........11

        C.      The Requested Incentive Award for Lead Plaintiff Is Reasonable .....................13

III.    CONCLUSION ........................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ................................................................2

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) .........................................................14

*In re Am. Apparel S'holder Litig.*,
   2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) ......................... *passim*

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .................................................... ix, 13

*In re Celera Corp. Secs. Litig.*,
   2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015) ........................10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ...............................................................4

*In re Citigroup Sec. Litig.*,
   2014 U.S. Dist. LEXIS 69382 (S.D.N.Y. May 20, 2014) ..........................5

*Chavez v. Blue Sky Natural Bev. Co.*,
   2012 U.S. Dist. LEXIS 195072 (N.D. Cal. June 1, 2012) .........................13

*In re CV Therapeutics, Inc. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 98244 (N.D. Cal. Apr. 4, 2007) ...........................8

*In re Cylink Sec. Litig.*,
   274 F. Supp. 2d 1109 (N.D. Cal. 2003) ...............................................6

*Destefano v. Zynga, Inc.*,
   2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ......................... *passim*

*Fischel v. Equitable Life Assur. Soc'y of the U.S.*,
   307 F.3d 997 (9th Cir. 2002) ..............................................................3

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ........................................................ vii, 11

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21, 2016) ......................13

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................. vii, 7, 11

*In re Heritage Bond Litigation*,
   2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) .........................5

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ....................................................10

*In re HP Sec. Litig.*,
    No. 3:12-cv-05980, slip op. (N.D. Cal. Nov. 13, 2015) ........................................................9

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 U.S. Dist. LEXIS 151498 (D. Nev. Oct. 19, 2012) ......................................................5

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................................................... vii, 6, 9

*Jonsson v. USCB, Inc.*,
    2015 U.S. Dist. LEXIS 69934 (C.D. Cal. May 28, 2015) ...............................................13, 14

*Lopez v. Youngblood*,
    2011 U.S. Dist. LEXIS 99289 (E.D. Cal. Sept. 1, 2011) ..................................................3, 4

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .................................................................................................8

*Nguyen v. Radient Pharms. Corp.*,
    2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) ....................................................10

*In re Nuvelo, Inc. Sec. Litig.*,
    2011 U.S. Dist. LEXIS 72260 (N.D. Cal. July 6, 2011) .......................................................8

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................................... *passim*

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ...............................................................................................14

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...................................................................................................8

*In re Portal Software, Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) ...............................................5. 6

*Razilov v. Nationwide Mut. Ins. Co.*,
    2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13, 2006) ...................................................14, 15

*Rieckborn v. Velti PLC*,
    2015 U.S. Dist. LEXIS 13542 (N.D. Cal. Feb. 3, 2015) .....................................................12

*Roberti v. OSI Sys.*,
    2015 U.S. Dist. LEXIS 164312 (C.D. Cal. Dec. 8, 2015)....................................................10

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) .................................................................................................4

*In re Solectron Corp., Sec. Litig.*,
    No. 03-cv-00986, slip op. (N.D. Cal. Mar. 16, 2016) ............................................9

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................ vi, 4, 8

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995)............................................................. viii, 13

*In re ViroPharma Inc. Sec. Litig.*,
    2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016)........................................10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................8, 9, 10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ............................................................................3, 4

*Watkins v. Hireright, Inc.*,
    2016 U.S. Dist. LEXIS 136200 (S.D. Cal. Sept. 30, 2016) ................................3, 4

1

**STATEMENT OF ISSUES TO BE DECIDED**

2  1.  Should the attorneys' fees requested by Lead Counsel be awarded?

3  2.  Should the expenses incurred by Lead Counsel be reimbursed?

4  3.  Should the incentive award to Lead Plaintiff be awarded?

5

**SUMMARY OF THE ARGUMENT**

6    In connection with the Settlement, Lead Counsel respectfully seeks approval of an award of

7 attorneys' fees in the amount of 25% of the Settlement Fund, after deduction of Litigation

8 Expenses, or $1,519,421.22, plus accrued interest, reimbursement of $172,315.12 in expenses

9 reasonably incurred during the course of the Action, and approval of an incentive award of $10,000

10 for Lead Plaintiff.  The requested fee is fair and reasonable in light of the significant obstacles Lead

11 Counsel has faced during prosecution of this Action, Lead Counsel's skill and expertise in litigating

12 securities class actions, and the favorable result obtained for the Class.  In recognition of the risks

13 undertaken and the effort expended by counsel in contingency fee cases, courts in this Circuit and

14 throughout the United States routinely award fees of this size in complex securities cases with

15 comparable recoveries.

16 **The Requested Fee Is Reasonable**

17    While courts have discretion to use the "percentage of the fund" method or the lodestar

18 method to calculate attorneys' fees, "use of the percentage method in common fund cases appears

19 to be dominant" in this Circuit and its "advantages . . . have been described thoroughly by other

20 courts."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042, 1046 (N.D. Cal. 2008).

21    Under the percentage of the fund method, courts in this Circuit have established a 25%

22 benchmark for attorneys' fees.  *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003).  When

23 assessing whether a fee in line with the 25% benchmark is fair and reasonable in a particular case,

24 or whether the fee should be adjusted upwards or downwards, courts generally consider the

25 following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the

26 quality of work performed; (4) the contingent nature of the fee and the financial burden; and (5) the

27 awards made in similar cases.  *See Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *57

28 (N.D. Cal. Feb. 11, 2016).

First, the recovery achieved in this Action, $6,250,000 in all cash, is an excellent result that will provide the Class with an immediate and certain benefit.  The ratio of the Settlement Amount to overall damages is in line with similar actions.  Second, in representing a securities class action subject to the PSLRA, Lead Counsel undertook significant risks that the case may be dismissed in the pre-trial stages, leaving counsel with no recovery for its efforts.  Third, Lead Counsel has exhibited a great deal of skill and diligence throughout all stages of this Action and has faced a formidable opponent in defense counsel that has mounted strong defenses.  Fourth, despite the significant risks of recovery facing securities litigation actions, Lead Counsel has represented the Class on a contingency basis for over three years and has paid out of pocket for all of the expenses of litigating this Action.  Fifth, since the Ninth Circuit has set a benchmark of 25%, this requested fee is in-line with attorneys' fees awarded in similar actions.

In addition to the foregoing factors, "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007).  Here, Lead Counsel's lodestar is $2,038,773.75, based upon 3,421.75 hours, which is more than the requested fee.  Thus, the lodestar cross-check supports the reasonableness and fairness of the requested attorneys' fees.

As well, the reaction of the Class to the request for attorneys' fees has been overwhelmingly positive.  Of the 37,571 Settlement Notices that have been mailed out to potential Class members since April 27, 2017, no one has objected to the request for attorneys' fees.

## The Expenses Are Reasonable

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *75 (C.D. Cal. June 10, 2005).  The appropriate analysis to apply in deciding whether expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

1    Here, Lead Counsel also respectfully requests reimbursement of $172,315.12 for expenses

2  reasonably incurred in connection with prosecuting this Action.  These expenses include expert and

3  investigator fees, mediation fees, filing fees, electronic research, photocopying, postage, meals,

4  travel, and lodging, and are all the types of costs for which courts reimburse attorneys in complex

5  securities class actions such as this one.  *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *72-73

6  (approving "$189,427.69 in litigation expenses, including copying, court costs, computer research,

7  delivery fees, expert and investigator fees, mediation, telephone, and travel costs.").

8    Further, the Settlement Notice informed the Class that Lead Counsel would seek a

9  reimbursement of expenses not to exceed $200,000 and to date, not one potential Class Member has

10  objected to this amount.  Therefore, Lead Counsel respectfully submits that the amount of expenses

11  is reasonable.

12  **The Incentive Award for Lead Plaintiff Is Reasonable**

13    Courts in the Ninth Circuit have granted incentive awards to lead plaintiffs for their

14  representation of the class in securities actions, "both as an inducement to participate in the suit and

15  as compensation for time spent in litigation activities, including depositions."  *In re Am. Apparel*

16  *S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, at *96-97 (C.D. Cal. July 28, 2014).  "The criteria

17  courts may consider in determining whether to make an incentive award include: "1) the risk to the

18  class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal

19  difficulties encountered by the class representative; 3) the amount of time and effort spent by the

20  class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof)

21  enjoyed by the class representative as a result of the litigation."  *Van Vranken v. Atl. Richfield Co.*,

22  901 F. Supp. 294, 299 (N.D. Cal. 1995).

23    Here, Lead Plaintiff is requesting an incentive award in the amount of $10,000.  Over the

24  course of three years Lead Plaintiff has spent a significant amount of time representing the Class in

25  this case by, *inter alia*, engaging in communications with Lead Counsel; meeting with Lead

26  Counsel in person on two occasions; providing input into the prosecution of the case; reviewing

27  documents filed in this Action; responding to document requests and interrogatories; preparing for a

28  deposition; and consulting with counsel on the mediation and settlement negotiations.  Lead

1    Plaintiff is also only set to receive his *pro rata* share of the Settlement Fund, the same recovery as

2    the other Class members who were not involved in the litigation in any way.  Based on the time and

3    energy Lead Plaintiff has dedicated to this Action, Lead Counsel respectfully submits that $10,000

4    is a reasonable award.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal.

5    2015) (awarding $10,000 incentive award).

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Faruqi & Faruqi, LLP, Court-appointed Lead Counsel for the Lead Plaintiff Vinod Patel and the Class,[1] respectfully submits this memorandum of points and authorities in support of its motion for an award of attorneys' fees, reimbursement of expenses, and an incentive award for Lead Plaintiff.

## I.   PRELIMINARY STATEMENT

As discussed in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of the Class Action Settlement ("Final Approval Brief"), filed concurrently herewith, Lead Plaintiff, on behalf of himself and the Class, has reached a proposed Settlement of this class action lawsuit (the "Action") pursuant to which defendants Geron Corporation ("Geron"), Dr. John A. Scarlett, M.D., Olivia K. Bloom, and Dr. Stephen M. Kelsey, M.D. (collectively, "Defendants")[2] have agreed to pay a total of $6,250,000 in cash that, if approved, will result in the dismissal of all claims asserted in this Action and a full release of all claims asserted against the Released Parties. The Settlement is the result of zealous prosecution by Lead Counsel through every stage of the litigation and constitutes an excellent result for the Class considering the significant risks that a smaller recovery—or indeed no recovery—might be achieved after a lengthy trial, and the likely appeals that would follow.

In connection with the Settlement, Lead Counsel respectfully seeks approval of an award of attorneys' fees in the amount of 25% of the Settlement Fund, after deduction of Litigation Expenses, or $1,519,421.22, plus accrued interest, and reimbursement of $172,315.12 in expenses reasonably incurred during the course of the Action.  The requested fee is fair and reasonable in light of the significant obstacles Lead Counsel has faced during prosecution of this Action, Lead Counsel's skill and expertise in litigating securities class actions, and the favorable result obtained for the Class.  In recognition of the risks undertaken and the effort expended by counsel in

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as those in the Stipulation and Agreement of Settlement dated as of March 2, 2017 (the "Stipulation") (ECF No. 119).  All references to the "Faruqi Decl." are to the Declaration of Nadeem Faruqi in Support of Lead Plaintiff's Motion for Final Approval of the Class Action Settlement and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Faruqi Declaration") filed currently herewith.  All quotations and citations are omitted unless otherwise noted.

[2] Lead Plaintiff and Defendants are defined herein as the "Settling Parties."

1  contingency fee cases, courts in this Circuit and throughout the United States routinely award fees

2  of this size in complex securities cases with comparable recoveries.

3      This litigation was prosecuted under the Private Securities Litigation Reform Act of 1995

4  (the "PSLRA"), which was intended to make litigation of securities class action lawsuits

5  significantly more challenging and burdensome on investors.  In recognizing the significant

6  difficulty investors face under the PSLRA, retired Supreme Court Justice Sandra Day O'Connor

7  recognized: "To be successful, a securities class-action plaintiff must thread the eye of a needle

8  made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec.*

9  *Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

10      This Action was no exception: it has been risky and challenging from its outset, and Lead

11  Counsel has undertaken a significant amount of work in order to obtain this excellent recovery for

12  the Class.  Over the course of three years, Lead Counsel has, *inter alia*: (1) conducted an extensive

13  investigation into the facts alleged in the Action, reviewing U.S. Food and Drug Administration

14  ("FDA") documents, press releases, SEC filings, conference call transcripts, and analyst reports; (2)

15  conducted detailed medical research regarding liver function test ("LFT") abnormalities and

16  navigated the FDA's complex regulatory scheme for clinical trials; (3) researched and drafted an

17  amended complaint; (4) researched and drafted motion to dismiss briefing; (5) consulted with

18  medical experts and a damages expert; (6) drafted a detailed mediation statement; (7) reviewed

19  thousands of pages of documents produced by Defendants to facilitate mediation; (8) propounded

20  initial disclosures, document requests, interrogatories, and requests for admission; (9) served third-

21  party subpoenas and reviewed hundreds of documents produced in response to the subpoenas; (10)

22  communicated with the FDA regarding the third party subpoena Lead Plaintiff had served on the

23  organization; (11) researched and drafted a motion for class certification; and (12) engaged in in-

24  person mediation sessions and numerous telephonic conferences with a mediator and Defendants'

25  Counsel to reach a resolution of the claims.

26      Notwithstanding the heavy burden that Lead Counsel bore in this Action, it undertook

27  representation of the Class on a wholly contingent basis and assumed sole responsibility for the

28  expenses it incurred.  Lead Counsel dedicated thousands of hours to this Action without payment,

1    racking up a lodestar of $2,038,773.75, which results in a negative lodestar multiplier of -1.34.  *See*

2    Faruqi Decl., ¶78.  The Class itself appreciates the risk that Lead Counsel undertook, as not a single

3    Class Member has objected to the fee, expenses, or incentive award since notice was disseminated

4    beginning on April 27, 2017.  *See id.* ¶62; Declaration of Alexander Villanova Regarding (A)

5    Mailing of the Settlement Notice and Proof of Claim Form; (B) Publication of the Publication

6    Notice; and (C) Report on Requests for Exclusion and Objections Received to Date ("Villanova

7    Declaration" or "Villanova Decl."), ¶¶7, 20.

8         Lead Counsel firmly believes that the outstanding recovery obtained for the Class in the face

9    of the significant obstacles and challenges presented by this Action is a direct result of its diligent

10   and effective advocacy, as well as its unwavering dedication to the best interests of the Class.  Thus,

11   Lead Counsel respectfully submits that the requested fee is fair and reasonable under the applicable

12   standards of this Circuit and should be approved.  Lead Counsel also respectfully requests that the

13   Court reimburse Lead Counsel's expenses and approve incentive award for Lead Plaintiff.

14   **II.    ARGUMENT**

15        **A.    The Requested Fee Is Reasonable In This Case**

16             **1.    Percentage of the Fund Is the Preferred Method**

17        It is well established in the Ninth Circuit that, in a common fund case, the court has

18   discretion to apply either the percentage of the fund method or the lodestar method in calculating a

19   fee award.  *See Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir.

20   2002); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994)

21   ("*WPPSS*").  However, "use of the percentage method in common fund cases appears to be

22   dominant" in this Circuit and its "advantages . . . have been described thoroughly by other courts."

23   *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042, 1046 (N.D. Cal. 2008).  For example, in

24   addition to removing the burden on courts to calculate the attorneys' lodestar, the percentage of the

25   fund method incentivizes attorneys to obtain the maximum possible recovery for the class in the

26   most efficient manner.  *See Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *9 (E.D. Cal.

27   Sept. 1, 2011) ("[T]he percentage of the available fund analysis is the preferred approach in class

28   action fee requests because it more closely aligns the interests of the counsel and the class, *i.e.*,

3

1    class counsel directly benefit from increasing the size of the class fund and working in the most

2    efficient manner.").

3              2.        **The Requested Fee of 25% Is Reasonable in this Case**

4              While the ultimate determination of the appropriate amount of attorneys' fees to be awarded

5    in each case rests within the sound discretion of the district court, *see Rodriguez v. Disner*, 688 F.3d

6    645 (9th Cir. 2012), "[t]his circuit has established 25% of the common fund as a benchmark award

7    for attorney fees." *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003).  The benchmark is a

8    starting point, "the district court should be guided by the fundamental principle that fee awards out

9    of common funds be reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296.  Thus, in

10   assessing whether a fee in line with the 25% benchmark is fair and reasonable in a particular case,

11   or whether the fee should be adjusted upwards or downwards, courts generally consider the

12   following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the

13   quality of work performed; (4) the contingent nature of the fee and the financial burden; and (5) the

14   awards made in similar cases.  *See Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *57

15   (N.D. Cal. Feb. 11, 2016).

16             a.        **Lead Counsel Obtained an Excellent Result for the Class**

17             "The overall result and benefit to the class from the litigation is the most critical factor in

18   granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1042, 1046.

19             The recovery achieved in this Action, $6,250,000 in all cash, is an excellent result that will

20   provide the Class with an immediate and certain benefit.  The Settlement Amount is 4.9% of the

21   maximum damages Lead Plaintiff's expert estimated the Class sustained as a result of Defendants'

22   alleged fraudulent activity.  *See* Faruqi Decl. ¶74.  This is much higher than the median ratio of

23   settlement amounts to investor losses for 2016 which NERA Economic Consulting determined was

24   2.1%.  *See* Faruqi Decl. Ex. C at 37, Svetlana Starykh and Stefan Boettrich, *Recent Trends in*

25   *Securities Class Action Litigation: 2015 Full-Year Review* (NERA 2017).  The percentage is also

26   within the range of typical recoveries in complex securities litigation.  *See In re Cendant Corp.*

27   *Litig.*, 264 F.3d 201, 231 (3d Cir. 2001) (noting that typical recoveries in complex securities class

28   actions range from 1.6% to 14% of estimated damages); *see also IBEW Local 697 Pension Fund v.*

*Int'l Game Tech., Inc.*, 2012 U.S. Dist. LEXIS 151498, at *9-10 (D. Nev. Oct. 19, 2012) (finding settlement that was of 3.5% of maximum damages was "within the median recovery in securities class actions"); *In re Citigroup Sec. Litig.*, 2014 U.S. Dist. LEXIS 69382, at *15 (S.D.N.Y. May 20, 2014) (determining settlement amount equal to 2% of the class' out-of-pocket losses "falls squarely within this range of reasonableness").

Furthermore, when negotiating the Settlement, Lead Counsel carefully examined the continued time and expense of additional litigation as well as Lead Plaintiff's likelihood of success on the merits, the maximum provable damages after discovery, and the likelihood of obtaining a larger settlement after continued litigation, and determined that in light of these issues the Settlement Amount was an outstanding result for the Class. *See* Faruqi Decl., ¶39. Specifically, in order to develop the claims in the CAC, continuation of the fact discovery process would require, among other things, engaging in discovery motion practice, producing and reviewing hundreds of thousands of pages of documents, taking numerous depositions, engaging in litigation with the FDA to produce documents in its possession, and retaining additional medical and financial expert witnesses. *See id.* at ¶¶42, 43. Even after the considerable time and expense of additional fact discovery, there is a chance that Lead Plaintiff's claims could be dismissed at summary judgment. *See id.* at ¶41. Thus, "the result achieved for the Class—especially at this early stage—is favorable considering the potential vulnerabilities of Lead Plaintiff's case." *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *58.

### b.    Litigation of this Action Involved Significant Risks

"The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at *68 (C.D. Cal. June 10, 2005). Securities class actions in particular are extremely risky in light of the heavy pleading burden imposed by the PSLRA. From 2000 to 2016, for example, 44% of securities class action suits were dismissed at the motion to dismiss stage. *See* Faruqi Decl., Ex. C, NERA Report at 21; *In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, at *8 (N.D. Cal. Nov. 26, 2007) (noting "significant

1  risks" that the PSLRA poses "to plaintiffs' ability to survive . . . summary judgment and prevail[] at

2  trial").

3  　　　While the CAC did survive Defendants' motion to dismiss, there is a material risk that Lead

4  Plaintiff's claims might be dismissed at a later stage of litigation, leaving Lead Counsel with no

5  compensation for its more than three years of representation.  *See* Faruqi Decl., ¶41.  Further

6  litigation, while perhaps successful, would also significantly deplete the insurance policies used to

7  fund the Settlement, leaving Lead Plaintiff with only the Company and the Individual Defendants to

8  fund any recovery.  In *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal.

9  2007), the court found a fee equal to 25% of the fund reasonable when plaintiffs argued that

10 "prolonging a resolution of the case would increase the risk that the funds available for a judgment

11 would be depleted due to litigation expenses."  *See also, In re Cylink Sec. Litig.*, 274 F. Supp. 2d

12 1109, 1111 (N.D. Cal. 2003) (considering future depletion of "wasting" insurance policies when

13 granting final approval of settlement).

14 　　　　　　**c.**　　　**Lead Counsel Provided Quality Representation**

15 　　　"The prosecution and management of a complex national class action requires unique legal

16 skills and abilities."  *Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *58.  "This is particularly true in

17 securities cases because the Private Securities Litigation Reform Act makes it much more difficult

18 for securities plaintiffs to get past a motion to dismiss."  *Omnivision*, 559 F. Supp. 2d at 1047; *In re*

19 *Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, at *71 (C.D. Cal. July 28, 2014) ("The

20 difficulty of securities litigation generally—particularly the challenges presented by the PSLRA's

21 pleading requirements—requires skilled counsel familiar with the relevant statutes and case law.").

22 　　　　Lead Counsel is a national law firm with extensive experience representing investors in

23 large, complex securities class actions.  *See* Faruqi Decl. ¶75; Ex. D.  Specifically, as set forth in the

24 Faruqi Firm Resume, in recent years, Lead Counsel has served as lead or co-counsel in numerous

25 large class action litigations and secured significant recoveries for injured investors.  *See id.*  Lead

26 Counsel's experience and skill were demonstrated by the zealous and effective prosecution of this

27 Action over the past three years.  Lead Counsel conducted an extensive fact investigation that

28 involved conducting detailed medical research regarding LFTs and the FDA's complex regulatory

1   scheme governing clinical trials, and consulted with medical experts to better understand the very

2   complex trial data at issue in this Action.  *See id.* ¶¶26, 77.  Lead Counsel drafted a detailed

3   complaint, supported by persuasive briefing that, despite the strict barriers imposed by the PSLRA,

4   survived Defendants' first motion to dismiss.  *See id.* ¶28.  Additionally, Lead Counsel served third

5   party subpoenas on Geron's liver panel experts that resulted in receipt of informative documents

6   and information.  *See id.* ¶36.  Lead Counsel also worked closely with an economic expert and filed

7   a motion for class certification that Lead Counsel strongly believes would have been successful if

8   the Settling Parties had continued to litigate the Action.  *See id.* ¶37.

9       "In addition to the difficulty of the legal and factual issues raised, the court should also

10   consider the quality of opposing counsel as a measure of the skill required to litigate the case

11   successfully."  *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *72.  Defendants' counsel, Cooley,

12   LLP, is an excellent law firm which is renowned for its securities litigation practice.  *See* Faruqi

13   Decl. ¶76.  The attorneys who represented Defendants in this matter were formidable opponents

14   who worked tirelessly on behalf of their clients and mounted strong defenses.  Outnumbered by a

15   much larger law firm with significant resources, at every stage of the proceedings Lead Counsel

16   was required to litigate at a very high level of skill, efficiency, and professionalism.

### d.     Lead Counsel Took on a Financial Burden

18       In addition to the risks associated with complex litigation, "the risk of non-payment or

19   reimbursement of expenses [in cases undertaken on a contingent basis] is a factor in determining

20   the appropriateness of counsel's proper fee award."  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555,

21   at *68-69.  Courts in this Circuit have found that "the importance of assuring adequate

22   representation for plaintiffs who could not otherwise afford competent attorneys justifies providing

23   those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing

24   by the hour or on a flat fee."  *Omnivision*, 559 F. Supp. 2d at 1047.

25       When Lead Counsel undertook representation of Lead Plaintiff in this Action, it was aware

26   that embarking on a complex securities class action under the strict pleading standards set by the

27   PSLRA posed a significant risk of non-payment.  Indeed, as mentioned above, over the past sixteen

28   years nearly half of securities class action cases failed to survive past the motion to dismiss stage.

1    *See* Faruqi Decl., Ex. C, NERA Report at 21.  Even of those cases that do survive the motion to

2    dismiss, many have resulted in no attorneys' fees after years of hard fought litigation due to, *inter*

3    *alia*, facts unknown when the case began, changes in the law when the case is pending, or a

4    decision of a judge, jury, or court of appeals.

5         Despite this risk, Lead Counsel prosecuted this Action on a contingent fee basis and has not

6    received any compensation for its services or reimbursement for the expenses incurred for over

7    three years.  *See* Faruqi Decl. ¶70.  In order to reach the Settlement for the benefit of the Class,

8    Lead Counsel has had to work thoroughly and diligently, investing a significant amount of time and

9    energy into the litigation of this Action.  Through these efforts, Lead Counsel has incurred 3,421.75

10   hours of attorney and staff time and $172,315.12 in expenses without reimbursement.  *See id.* ¶¶78,

11   81; Exs. D, E.  "This type of substantial outlay, when there is a risk that [no money] will be

12   recovered, further supports the award of the requested fees."  *Am. Apparel*, 2014 U.S. Dist. LEXIS

13   184548, at *73.  In addition to the time and expense, the lawyers working on this Action have

14   foregone the business opportunity to devote time to other cases.  *See Vizcaino v. Microsoft Corp.*,

15   290 F.3d 1043, 1050 (9th Cir. 2002) (considering opportunity cost).

16              **e.      The Fee Is In Line With the Customary Fee in Similar Actions**

17        "This circuit has established 25% of the common fund as a benchmark award for attorney

18   fees."  *Boeing Co.*, 327 F.3d at 968.  In regard to the fees awarded in similar actions, "several other

19   courts—including courts in this District—have concluded that a 25 percent award was appropriate

20   in complex securities class actions. . . . Indeed, in many securities class actions, the award has

21   exceeded the 25 percent benchmark."  *Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *61; *see,*

22   *e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming a 33.33 percent

23   of the fund fee award); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming

24   a 33 percent of the fund fee award); *Omnivision*, 559 F. Supp. 2d at 1047 (approving a 28 percent

25   fee award); *In re Nuvelo, Inc. Sec. Litig.*, 2011 U.S. Dist. LEXIS 72260, at *10 (N.D. Cal. July 6,

26   2011) (approving a 30 percent fee); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS

27   98244, at *5 (N.D. Cal. Apr. 4, 2007) (approving a 30 percent fee).

28

Lead Counsel undertook representation on a contingency fee basis for more than three years, risking the chance that it might not receive any reimbursement for the time and expenses invested in this Action. *See* Faruqi Decl. ¶70. Over the course of these three years, Lead Counsel worked tirelessly to develop and preserve the claims in this Action by, *inter alia*, conducting a lengthy fact investigation, developing an understanding of complex trial data and navigating the FDA's regulatory system, drafting a detailed amended complaint, researching and drafting motion to dismiss briefing, reviewing discovery documents produced by Defendants and third parties, consulting with medical and damages experts, engaging in the initial stages of fact discovery by propounding document requests, interrogatories, and subpoenas, researching and drafting a motion for class certification, and participating in numerous settlement discussions. *See id.* ¶77. Lead Counsel respectfully submits that based upon the time already invested in this Action and the skill exhibited by Lead Counsel in surviving the motions to dismiss ruled upon by the Court and reaching this Settlement prior to incurring the significant costs of complete fact discovery, the requested fee of 25% of the Settlement Fund, after deduction of Litigation Expenses, is fair and reasonable. Indeed, the "proposed fee of 25% is consistent, if not below, the average award in similar complex actions." *Immune Response*, 497 F. Supp. 2d at 1176.

Further, Lead Counsel's request for attorneys' fees complies with this Court's practice of deducting the litigation expenses prior to calculating the fee. *See, e.g., In re Solectron Corp., Sec. Litig.*, No. 03-cv-00986, slip op. at 1 (N.D. Cal. Mar. 16, 2016); *In re HP Sec. Litig.*, No. 3:12-cv-05980, slip op. at 2 (N.D. Cal. Nov. 13, 2015). Here, Lead Counsel is requesting 25% of the Settlement Fund, to be calculated after Litigation Expenses have been deducted from the fund.

### 3. The Requested Fee Is Reasonable Under the Lodestar Cross-Check

Although Lead Counsel seeks approval of a fee based upon the percentage of the fund method, a "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Immune Response*, 497 F. Supp. 2d at 1176. As the court in *Vizcaino*, 290 F.3d at 1050 explained:

> Where such investment [of time] is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful

1    in suggesting a higher percentage when litigation has been protracted.
     Thus, while the primary basis of the fee award remains the percentage
2    method, the lodestar may provide a useful perspective on the
     reasonableness of a given percentage award.

3         "Under the lodestar method, the lodestar figure is calculated by multiplying the number of

4    hours the prevailing party reasonably expended on the litigation (as supported by adequate

5    documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In*

6    *re Celera Corp. Secs. Litig.*, 2015 U.S. Dist. LEXIS 157408, at *24 (N.D. Cal. Nov. 20, 2015).

7         Here, as set forth in the detailed lodestar report submitted herewith (Ex. E to the Faruqi

8    Decl.) Lead Counsel has expended a total of 3,421.75 hours over the course of three years of

9    litigation.  *See* Faruqi Decl. ¶78; Ex. E.  With partners' rates of $795 per hour, and associates' rates

10   ranging from $375 to $550 per hour, this has resulted in a lodestar of $2,038,773.75.[3]  *See id.* ¶80;

11   Ex. E.  When the lodestar is compared to the fee of $1,519,421.22 requested by Lead Counsel, it

12   results in a ***negative*** multiplier of -1.34.  *See id.* ¶78.  Courts in this Circuit regularly approve fees

13   that result in positive lodestar multipliers "ranging between 1 and 4."  *OmniVision*, 559 F. Supp. 2d

14   at 1048; *Vizcaino*, 290 F.3d at 1050 (approving fee representing a multiple of 3.65 times counsel's

15   lodestar, and listing twenty-three shareholder settlements for which the average multiplier was

16   3.28).  Therefore, the negative lodestar multiplier in this case shows that the requested fee is more

17   than reasonable in light of the substantial time and energy Lead Counsel has invested in this Action.

18            **4.     The Reaction of the Class Supports the Requested Fee**

19        "The reaction of the class may also be a determining factor in the determining the fee

20   award."  *Omnivision*, 559 F. Supp. 2d at 1048.

21

22

---

23   [3]      These hourly rates are customary in the industry and reasonable for the region.  *See Roberti
     v. OSI Sys.,* 2015 U.S. Dist. LEXIS 164312, at *19-20 (C.D. Cal. Dec. 8, 2015) ("Lead Counsel's
24   attorney rates—between $525 to $975—are reasonable given that each has at least 15 years of
     litigation experience" with the exception of the associate); *Nguyen v. Radient Pharms. Corp.*, 2014
25   U.S. Dist. LEXIS 63312, at *29 (C.D. Cal. May 6, 2014) (finding partner time billed at $750 per
     hour, associate time at $325-550 per hour, and paralegal time at $200-225 per hour was
26   reasonable); *see also In re ViroPharma Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 8626, at *53-54
     (E.D. Pa. Jan. 25, 2016) ("The hourly billing rates of all of Plaintiff's Counsel range from $610 to
27   $925 for partners, $475 to $750 for of counsels, and $350 to $700 for other attorneys" and were
     reasonable); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 U.S. Dist. LEXIS 177175, at *38
28   (S.D.N.Y. Dec. 19, 2014) ("The rates billed by Lead Counsel (ranging from $425 to $825 per hour)
     for attorneys, are comparable to peer plaintiff" law firms.).

1   Pursuant to the Court's Preliminary Approval Order, the Claims Administrator mailed the

2   Settlement Notice and Proof of Claim form to 37,571 potential Class Members beginning on April

3   27, 2017.  *See* Villanova Decl. ¶¶7, 11.  That same day the Settlement Notice and Proof of Claim

4   form were also made available on the website www.GeronCorporationSecuritiesLitigation.com.

5   *See id.* ¶16.  On May 1, 2017, the Publication Notice was published in *Investor's Business Daily*

6   and was posted by *PR Newswire*.  *See id.* ¶12.  The Notices informed Class Members that Lead

7   Counsel would apply for an award of 25% of the Settlement Fund, plus expenses not to exceed

8   $200,000 and an award for Lead Plaintiff not to exceed $10,000.  *See* Villanova Decl., Ex. A at 1.

9   The deadline for objections to the fee request is June 26, 2017, as published in the Notices.  *See id.*

10   at 2.  As of June 9, 2017, no Class Member has objected to the amount of attorneys' fees requested.

11   *See* Faruqi Decl. ¶62.  "The lack of objection by any Class Members also supports the 25 percent

12   fee award."  *Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *62; *Am. Apparel*, 2014 U.S. Dist.

13   LEXIS 184548, at *69 (approving fee when no objections indicated that "the class overwhelmingly

14   favors the settlement and class counsel's request for fees, the amount of which was included in the

15   notice Gilardi mailed to class members.").

16   **B.      The Litigation Expenses Are Reasonable and Were Necessarily Incurred**

17   Lead Counsel also respectfully requests reimbursement of $172,315.12 for expenses

18   reasonably incurred in connection with prosecuting this Action.  *See* Faruqi Decl. ¶81; Ex. F.

19   "There is no doubt that an attorney who has created a common fund for the benefit of the class is

20   entitled to reimbursement of reasonable litigation expenses from that fund."  *Heritage Bond*, 2005

21   U.S. Dist. LEXIS 13555, at *75.  The appropriate analysis to apply in deciding whether expenses

22   are compensable in a common fund case is whether the particular costs are of the type typically

23   billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19

24   (9th Cir. 1994) ("Harris may recover part of the award of attorneys' fees those out-of-pocket

25   expenses that would normally be charged to a fee paying client.").  "To that end, courts throughout

26   the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing,

27   postage, court costs, research on online databases, experts and consultants, and reasonable

28   travel expenses—in securities class actions, as attorneys routinely bill private clients for

1   such expenses in non-contingent litigation." *Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *73

2   (approving $189,247.69 in costs); *Rieckborn v. Velti PLC*, 2015 U.S. Dist. LEXIS 13542, at *78

3   (N.D. Cal. Feb. 3, 2015) (approving $219,469.67 in expenses for primarily "experts, consultants,

4   and investigators" and "computerized factual and legal research and [] travel expenses[.]").

5        Lead Counsel has itemized the categories of expenses the law firm incurred and attests to

6   their accuracy. *See* Faruqi Decl. ¶83; Ex. F.  Lead Counsel's expenses include expert fees,

7   mediation fees, filing fees, electronic research, photocopying, postage, meals, travel, and lodging,

8   all of which Lead Counsel believes were reasonable and necessary to adequately prosecute the

9   claims in this Action.  *See* Faruqi Decl. ¶82; Ex. F.  One of the most significant expenses was the

10  cost of experts, which totaled $100,366.00.  *See* Faruqi Decl. ¶84; Ex. F.  While drafting the CAC,

11  Lead Counsel retained an expert at the FDA Group to provide important insight on the FDA

12  regulations relevant to the litigation.  *See* Faruqi Decl., ¶84.  As well, at the beginning of the fact

13  discovery stage of litigation, Lead Counsel retained Dr. Herbert Bonkovsky, M.D., a highly

14  regarded drug induced liver injury expert to assist Lead Counsel in understanding some of the

15  complex liver toxicity issues present in this Action.  *See id.*  The information provided by Dr.

16  Bonkovsky helped Lead Counsel fully comprehend the strength of the claims prior to entering into

17  settlement negotiations.  *See id.*  Lead Counsel also retained an economic consulting firm, Stanford

18  Consulting Group, to opine on damages and loss causation issues, prepare a market efficiency

19  report for the class certification motion, and prepare the Plan of Allocation.  *See id.*  These experts

20  provided invaluable assistance and insight for the class certification motion, as well as clarity on the

21  provable damages.  *See id.*  Lead Counsel respectfully submits that these expert fees were

22  reasonable and necessary to prosecute this Action.  *See Am. Apparel*, 2014 U.S. Dist. LEXIS

23  184548, at *69 (finding $50,314.54 for investigative services performed by L.R. Hodges &

24  Associates and $34,536.00 for economic consulting services performed by Stanford Consulting

25  Group to be reasonable expenses).  As set forth above, the remaining expenses for which Lead

26  Counsel seeks reimbursement, specifically, mediation fees, filing fees, electronic research,

27  photocopying, postage, meals, travel, and lodging, are all the types of costs for which courts

28  reimburse attorneys' in complex securities class actions such as this one.

1         Additionally, the Court-approved a Settlement Notice stating that Lead Counsel would seek

2    expenses not to exceed $200,000.  *See* Villanova Decl., Ex. A at 1.  To date, Lead Counsel has not

3    received any objections to the expense request, and Lead Counsel's actual request of $172,315.12 is

4    lower than that in the Settlement Notice.  *See* Faruqi Decl. ¶¶60, 62; *Zynga*, 2016 U.S. Dist. LEXIS

5    17196, at *73 (N.D. Cal. Feb. 11, 2016) (expenses were reasonable when "[n]o Class Member

6    objected to this figure.").  Thus, Lead Counsel respectfully requests an award of $172,315.12 as

7    reimbursement for these reasonable expenses.

8         **C.**    **The Requested Incentive Award for Lead Plaintiff Is Reasonable**

9         Courts in the Ninth Circuit have granted incentive awards to lead plaintiffs in securities

10   class actions for their representation of the class, "both as an inducement to participate in the suit

11   and as compensation for time spent in litigation activities, including depositions."  *Am. Apparel*,

12   2014 U.S. Dist. LEXIS 184548, at *96-97.  Incentive awards "are discretionary . . . and are

13   intended to compensate class representatives for work done on behalf of the class, to make up for

14   financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

15   willingness to act as a private attorney general."  *Hayes v. MagnaChip Semiconductor Corp.*, 2016

16   U.S. Dist. LEXIS 162120, at *28-29 (N.D. Cal. Nov. 21, 2016).  "The criteria courts may

17   consider in determining whether to make an incentive award include: "1) the risk to the class

18   representative in commencing suit, both financial and otherwise; 2) the notoriety and personal

19   difficulties encountered by the class representative; 3) the amount of time and effort spent by the

20   class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof)

21   enjoyed by the class representative as a result of the litigation."  *Van Vranken v. Atl. Richfield Co.*,

22   901 F. Supp. 294, 299 (N.D. Cal. 1995).

23        Lead Plaintiff Vinod Patel is seeking an incentive award of $10,000 related to his active

24   participation in this litigation.  Many courts in this Circuit have found that incentive awards are

25   reasonable to reimburse representative plaintiffs for their service to the class.  *See Bellinghausen v.*

26   *Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (approving $10,000 incentive award);

27   *Chavez v. Blue Sky Natural Bev. Co.*, 2012 U.S. Dist. LEXIS 195072, at *12 (N.D. Cal. June 1,

28   2012) (finding $10,000 incentive award reasonable); *Jonsson v. USCB, Inc.*, 2015 U.S. Dist. LEXIS

1   69934, at *27-28 (C.D. Cal. May 28, 2015) (finding $10,000 incentive award reasonable).

2   Additionally, the payment amounts to approximately 0.16% of the total settlement amount.  *See In*

3   *re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving $45,000 in

4   incentive award when it only made up 0.17% of settlement amount); *Alberto v. GMRI, Inc.*, 252

5   F.R.D. 652, 669 (E.D. Cal. 2008) (citing approval of incentive payments ranging from 0.17% to

6   0.71% of the total settlement amount).

7         As set forth in the Declaration of Vinod Patel, attached as Exhibit G to the Faruqi

8   Declaration, over the past three years in fulfillment of his responsibilities as Lead Plaintiff, Mr.

9   Patel has (i) engaged in numerous communications with Lead Counsel; (ii) participated in the

10  litigation and provided input into the prosecution of the case; (iii) reviewed documents filed in this

11  Action, including the CAC, motion to dismiss briefing, and class certification briefing; (iv)

12  responded to written discovery and produced discovery documents; (v) met with counsel in person

13  on two occasions, including traveling to New York to prepare for his deposition; (vi) reviewed

14  substantial materials in preparation for his deposition; and (vii) consulted with counsel and

15  provided input on the mediation and settlement negotiations.  *See* Faruqi Decl., Ex. G.  Not only has

16  Lead Plaintiff been actively involved in the litigation since his appointment in 2014, when seeking

17  to certify the class and be appointed as class representative in 2016, he filed a declaration re-

18  affirming his willingness to continue to serve the class and participate in the prosecution of the

19  case.  ECF No. 109-3.  These are precisely the type of activities that courts in this Circuit have

20  found support awards to lead plaintiffs.  *See Watkins v. Hireright, Inc.*, 2016 U.S. Dist. LEXIS

21  136200, at *11 (S.D. Cal. Sept. 30, 2016) (finding $10,000 incentive award reasonable when sole

22  lead plaintiff was required to sit for a deposition, respond to written discovery, and produce

23  documents); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 82723, at *12 (D. Or.

24  Nov. 13, 2006) (awarding $10,000 when plaintiff participated by "producing their personal

25  documents, being subjected to depositions, being consulted on the strategy for appeal, and

26  discussing settlement alternatives with counsel.").  While the parties decided to stay the Action to

27  engage in additional settlement negotiations the week prior to Lead Plaintiff's' deposition, he had

28

1   substantially prepared and stood ready and willing to sit for a full day session.  *See* Faruqi Decl.,

2   Ex. G.

3        While Lead Plaintiff has not taken on a great deal of personal risk in litigating this Action,

4   his role as class representative has required them to take a great deal of time away from his personal

5   life.  Despite the personal investment of time Lead Plaintiff has contributed to the Action, Lead

6   Plaintiff is not set to receive anything other than his *pro rata* share of the Settlement Fund, thus, the

7   distribution will treat him like every other Authorized Claimant.  Lead Counsel respectfully submits

8   that the nominal amount of $10,000 is fair under these circumstances.  *See Razilov*, 2006 U.S. Dist.

9   LEXIS 82723, at *12-13 (authorizing incentive award when the only benefit the class representative

10  was set to receive was the same statutory payment as every other plaintiff).  Furthermore, "[w]hen

11  litigation has been protracted, an incentive award is especially appropriate."  *Am. Apparel*, 2014

12  U.S. Dist. LEXIS 184548, at *96-97.  This Action has lasted more than three years, and it will

13  likely be many months before any distribution to the class is approved.  Lead Plaintiff took on this

14  role knowing that it would take many years to obtain any recovery, if at all.  Thus, his willingness

15  to see this Action through resolution should count in favor of the award.

16       Furthermore, the Notices informed potential Class Members that Lead Counsel would seek

17  an award for Lead Plaintiff not to exceed $10,000, and, as of June 9, 2017, not one Class Member

18  has objected to this request.  *See* Faruqi Decl. ¶62.  Lead Counsel and Lead Plaintiff therefore

19  respectfully submit that the $10,000 sought for Lead Plaintiff, based upon his involvement in the

20  Action from its inception in 2014 to settlement today, is reasonable and should be granted.

21  **III.    CONCLUSION**

22       For the reasons stated above, Lead Counsel respectfully requests that this Court (a) award

23  Lead Counsel attorneys' fees in the amount of $1,519,421.22; (b) award Lead Counsel a

24  reimbursement of expenses in the amount of $172,315.12; and (c) award Lead Plaintiff $10,000 for

25  his representation in the Action.

26  Dated: June 9, 2017                    **FARUQI & FARUQI, LLP**

27                                  By:  */s/ Richard W. Gonnello*
                                        Richard W. Gonnello
28

Richard W. Gonnello (admitted *pro hac vice*)
Megan M. Sullivan (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
       msullivan@faruqilaw.com
       klenahan@faruqilaw.com

Barbara Rohr  SBN 273353
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Lead Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

By:        */s/ Richard W. Gonnello*
           Richard W. Gonnello

# Mailing Information for a Case 3:14-cv-01224-CRB In re: GERON CORPORATION SECURITIES LITIGATION

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ryan Edward Blair**
  rblair@cooley.com,chourani@cooley.com

- **Elaine Chang**
  echang@glancylaw.com

- **Brett Hom De Jarnette**
  bdejarnette@cooley.com,galancr@cooley.com

- **John C. Dwyer**
  dwyerjc@cooley.com,giovannonib@cooley.com

- **Nadeem Faruqi**
  nfaruqi@faruqilaw.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  michael@goldberglawpc.com

- **Richard W. Gonnello**
  rgonnello@faruqilaw.com,msullivan@faruqilaw.com,ecf@faruqilaw.com,dbehnke@faruqilaw.com

- **Katherine M. Lenahan**
  klenahan@faruqilaw.com

- **Kim Elaine Miller**
  kim.miller@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Barbara Ann Rohr**
  brohr@faruqilaw.com,smarton@faruqilaw.com,bheikali@faruqilaw.com,ecf@faruqilaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Alan William Sparer**
  asparer@sparerlaw.com,nblake@sparerlaw.com,dcorkran@sparerlaw.com,playzer@sparerlaw.com

- **Megan M Sullivan**
  msullivan@faruqilaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)